137 N.J. Super. 593 (1975)
350 A.2d 95
STATE OF NEW JERSEY, PLAINTIFF,
v.
LUMAS A. RICE, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division (Criminal).
November 24, 1975.
*595 Mr. Jack Gold, for movant International Fidelity Insurance Company (Messrs. Gold & Macri, attorneys).
*596 Mr. Richard Cignarella, for the County of Essex (Mr. Francis P. McQuade, Essex County Counsel, attorney).
SCALERA, J.S.C., Temporarily Assigned.
This is a civil action arising on motion of the surety on a recognizance of bail to vacate a forfeiture of the bail posted in the captioned criminal matter and to order an exoneration of the surety. R. 3:26-7; 1:13-3(b). Cf. State v. Peace, 63 N.J. 127 (1973).
The facts are not in dispute. Lumas Rice was arrested and charged with violation of the Controlled Dangerous Substance Act, N.J.S.A. 24:21-20, on December 3, 1971. Pursuant to R. 3:26-4(a) Rice was admitted to bail in the amount of $500 upon a recognizance with Rice as principal and movant International Fidelity Insurance Company as surety. On June 12, 1972 an indictment was returned against Rice and after entry of a plea of "not guilty" the bail previously posted was continued.
The matter was assigned to the trial list and eventually, on March 14, 1973, the trial judge suspended further proceedings and placed Rice under "supervisory treatment" of the county probation department for a term "not to exceed three years" pursuant to N.J.S.A. 24:21-27(a).
On December 6, 1973 the judge issued a bench warrant for Rice for a "violation of probation" (the precise reasons for which are not discernable from the records). On February 26, 1975 the probation department notified the judge that Rice had absconded and had violated the terms and conditions of supervisory treatment, requesting that the judge terminate supervisory treatment. An order to that effect was entered and the suspended proceedings were resumed pursuant to N.J.S.A. 24:21-27(b). Bail was ordered forfeited when Rice failed to appear for the trial. R. 3:26-6 (a). Rice has not yet been apprehended.
The surety now seeks to have this court set aside the forfeiture, contending that the conditions of the recognizance were satisfied at the time Rice was granted supervisory treatment *597 by the court (popularly known as "first offender" treatment) under the New Jersey Controlled Dangerous Substances Act, N.J.S.A. 24:21-1 et seq., specifically, N.J.S.A. 24:21-27, thus entitling it to a discharge or an exoneration.
The County of Essex opposes the surety's application, asserting that the failure of Rice to appear for trial as required by the judge after violation of the order of supervisory treatment constitutes a breach of the conditions of the surety's recognizance. R. 3:26.6(a).
Bail proceedings in this State are regulated primarily by the New Jersey Rules of Court. R. 3:26-4(a) requires that "[a] person admitted to bail shall, together with his sureties, sign and execute a recognizance * * *. The recognizance * * * shall be conditioned upon his appearance at all stages of the proceedings until final determination of the matter, unless otherwise ordered by the court. * * *" (Emphasis supplied). Paragraph (e) of R. 3:26-4 suggests that "any recognizance shall be discharged by court order upon proof of compliance with the conditions thereof or by reason of the judgment in any matter." Finally, R. 3:26-7 provides for exoneration of obligors and a release of bail "where the condition of the recognizance has been satisfied," or "by a timely surrender of the defendant into custody."
The recognizance herein specifically provided that Lumas Rice, as principal, and International Fidelity Insurance Company, as surety, did
* * * acknowledge themselves to be indebted to the State of New Jersey in the sum of Five Hundred Dollars * * * if default be made in the condition following, to wit:
Whereas, the principal has been bound over to await final determination of the cause * * * The Condition of This Recognizance is such that if the said principal shall appear at all stages of the proceedings until final determination of the cause, unless otherwise ordered by the Court, then this recognizance to be void, otherwise to remain in full force and virtue.
The surety contends that the order suspending the criminal proceedings and placing Rice on supervisory treatment for a *598 period "not to exceed three years" constituted such a "final determination" of the cause or matter, entitling the surety to exoneration under R. 3:26-7 or a discharge pursuant to R. 3:26-4(e).
The county argues that a "final determination" in a criminal matter is not reached until entry of a judgment of acquittal, conviction, dismissal or other similar final disposition. It asserts that the statutory suspension of proceedings here involved is interlocutory in both form and substance; that the statutory provision by its terms mandates further court action before "final determination of the matter" is reached. N.J.S.A. 24:21-27(b). Hence, successful completion of supervisory treatment further requires a formal "dismissal" of the still pending criminal proceeding, while violation thereof requires the court to "resume procedings" from the point of suspension. Id.
In this State a person admitted to bail must, together with his surety, execute a "recognizance," R. 3:26-4(a), or "recognizance of bail," N.J.S.A. 2A:162-1 et seq., in the amount set as bail.[1] The recognizance is the basic obligation of record required as a condition of allowing the posting of bail. R. 3:26-4(a). In criminal proceedings such a recognizance of bail is an obligation of record entered into before a person authorized to take bail, condtioned upon the appearance of the accused at all stages of the proceedings until final determination of the matter. R. 3:26-4(a); 8 Am. Jur.2d, Bail and Recognizance, § 2 at 782; 8 C.J.S. Bail §§ 2c at 6; 29c at 55. The term "bail bond" and "surety bond" are often erroneously used interchangeably to describe a "recognizance of bail." Cf. R. 1:13-3. The actual differences in these intsruments may become important in some circumstances. 8 Am. Jur.2d, Bail and Recognizance, § 2 at 782-783; 8 C.J.S. Bail § 29d at 55-56.
*599 The recognizance posted in satisfaction of the amount of bail required may take several forms but must contain certain specific provisions. R. 1:13-3(b); R. 3:26-4(a). If "no security need be required," the accused may, by execution of a recognizance, simply obligate himself to pay the set amount upon default. R. 3:26-1(a). This procedure is commonly referred to as "R.O.R." or "Released on Own Recognizance." The recognizance may be executed by the accused jointly with another individual or individuals with the latters acting as surety-obligors. R. 3:26-4(a).
Cash or real estate may be tendered as security for the amount required, with the owner thereof as surety and the accused jointly executing the recognizance. N.J.S.A. 2A:162-1; R. 1:13-3(c), 3:26-4, 5. Both the New Jersey statutes, N.J.S.A. 2A:162-1, et seq. and N.J.S.A. 47:1-1, and the New Jersey rules of court, R. 3:26-4(c), (f), specify procedures for posting this type of security.
Lastly, a so-called "bail bond" or "surety bond" will be allowed to satisfy the amount of bail. Actually, this terminology is misleading. There is no independent bail bond or surety bond posted in actual practice. In these instances an "approved corporate surety" and the accused jointly execute the same basic recognizance of bail. The distinction lies in the qualifications of the surety, for here it involves an "approved corporate surety," i.e., one approved by the Commissioner of Insurance to engage in such business. N.J.S.A. 1:1-2.2; R. 3:26-4(a). Strict limitations are imposed on sureties other than "approved corporate sureties." R. 3:26-4, 5.
Obviously, the purpose of bail is to secure the release of the accused from imprisonment pending disposition of the charge and to assure his presence in court when lawfully required in connection with that charge. State v. Konigsberg, 33 N.J. 367, 372-373 (1960); State v. Tucker, 101 N.J. Super. 380, 382 (Law Div. 1968); 8 Am. Jur.2d, Bail & Recognizance, § 4 at 784; 8 C.J.S. Bail § 30. Its effect is to transfer custody to his "bail" and at the *600 same time keep the accused constructively in the custody of the court while the charge is pending. 8 Am. Jur.2d, Bail & Recognizance, § 4; 8 C.J.S. Bail § 31.
The recognizance of bail constitutes a contract, and where executed by a surety amounts to a contract between that surety and the State. State v. Gonzalez, 69 N.J. Super. 283, 291 (App. Div. 1961); 8 Am. Jur.2d, Bail & Recognizance, § 59. As such, the traditional rules of contract law are applicable. The recognizance must be construed according to its express terms. The plain meaning may not be modified where no ambiguity exists. 8 Am. Jur.2d, Bail & Recognizance, § 59; 8 C.J.S. Bail § 62; Cf. Midland Carpet Corp. v. Franklin Assoc. Prop., 90 N.J. Super. 42, 46 (App. Div. 1966); U.S. Pipe & Foundry Co. v. American Arbitration Ass'n, 67 N.J. Super. 384, 393 (App. Div. 1961); Commonwealth v. Hill, 180 Pa. Super. 430, 119 A.2d 572, 573 (Super. Ct. 1956).
In the instant case, upon the initial arrest of Rice for a violation of the Controlled Dangerous Substances Act, the bail, International Fidelity Insurance Company, removed "custody" of the accused from the State upon a promise that it would secure his appearance "at all stages of the proceedings until final determination" of that charge and in default thereof pay the acknowledged sum of $500 to the State.
Thus viewed the issue is simply a construction of the explicit phrase, "until final determination," contained in the recognizance of bail. R. 3:26-4(a). If the suspension of proceedings under the Controlled Dangerous Substances Act does constitute a "final determination" of the charge against Rice, then the surety has satisfied the condition of the undertaking and is entitled to have the forfeiture vacated and to be exonerated. R. 3:26-7.
There are conflicting views in the various jurisdictions, of what constitutes such a "final determination" in a criminal matter, some turning upon the particular terminology employed in the written obligation, others upon relevant *601 statutory language. 8 Am. Jur.2d, Bail & Recognizance, §§ 96-106; 8 C.J.S. Bail § 79g, at 221-3. Commonly, a final determination in a criminal case occurs upon a dismissal on the merits, an acquittal or upon sentence after conviction. Northern v. U.S., 300 F.2d 131, 132 (6 Cir.1962); U.S. v. Horns, 147 F.2d 57, 59 (3 Cir.1945); Silvers v. State, 59 N.J.L. 428, 431 (E. & A. 1896).
Plainly, where the criminal charge is finally determined by an acquittal and the defendant necessarily discharged, the surety is exonerated. Where the criminal cause is subject to a dismissal or order quashing the indictment, the authorities are not in agreement, and again the particular language of the bail document under review is often determinative. 8 Am. Jur.2d, Bail & Recognizance, § 137; 8 C.J.S. Bail § 79 at 218-219. Compare the cases cited in Annotation, "Dismissal or vacation of indictment as terminating liability or obligation of surety on bail bond," 18 A.L.R.3d 1354 (1968).
This jurisdiction has, in the past, demonstrated a tendency to hold a cognizor to his obligation until all likelihood of further prosecution has passed.[2] Hence, in State v. Hancock, 54 N.J.L. 393 (Sup. Ct. 1892), the court refused to discharge the surety where the original indictment was quashed and another indictment was returned charging a similar offense based upon the facts underlying the first indictment. That court held that "final determination" in a recognizance was not reached when the indictment had been quashed but rather that such a provision requires an ultimate disposal of the entire controversy originally at issue.
*602 Similarly, Silvers v. State, 59 N.J.L. 428 (E. & A. 1897), involved a nolle prosequi of the indictment. There, despite the State's failure to take further action to have the defendant re-indicted, the court also refused to discharge the bail reasoning that
* * * the cessation of the criminal proceeding in a certain form leaving a potentiality of its further prosecution in a different method does not ipso facto discharge a defendant from the obligation of his recognizance. [at 431; emphasis supplied]
Supervisory treatment under the C.D.S. Act, not unlike a diversionary program (R. 3:28), is designed to provide a method for rehabilitation of an offender while at the same time permitting avoidance of the burden and stigma of a criminal conviction. Such proceeding, by interlocutory order, allows the court reasonable time (not to exceed three years) to assess and evaluate the advisability of either a dismissal of the charge or a resumption of the proceedings to a final determination within the traditional criminal justice process. N.J.S.A. 24:21-27(b). See generally, State v. DiLuzio, 130 N.J. Super. 222 (Law Div. 1974).
Delays in dispositions of criminal cases are not uncommon, especially in recent years. A surety is or should be aware that his obligation on the recognizance will remain active during the entire time period required to finally dispose of a charge against the principal. The mandated form of recognizance expressly so provides without any suggestion of a time limitation, and the absence of ambiguity permits of no judicial construction to suggest such. Nevertheless, the surety is not without available relief. If, after entering into the contract of recognizance, a surety desires to terminate or limit the obligation, both the rules of court and the terms of the recognizance provide that a surety may apply to the court for such an order or tender a timely surrender of the defendant into custody. Upon such application a court may entertain and resolve whether to exonerate the surety and, if so, upon what terms or conditions, if any. R. *603 3:26-7; State v. Gonzalez, supra, 69 N.J. Super. at 289; 8 Am. Jur.2d Bail & Recognizance, § 129 et seq. A surety's right to so act is not affected or mitigated by placing the principal under supervisory treatment.
Generally, where a defendant pleads guilty or is convicted, a recognizance conditioned upon his appearance until final determination is uniformly construed to remain in effect at least until he is sentenced and custody of the accused actually passes to a proper officer of the law. 8 Am. Jur.2d, Bail & Recognizance, § 105; 8 C.J.S. Bail § 82c(6) at 233. These authorities reason that the initial consideration of transfer of custody to the surety has now been removed and thus discharges the surety. Id.; cf. State v. Gonzalez, 69 N.J. Super. 283, 288 (App. Div. 1961).
In light of this settled view and its relationship to the concept of pretrial diversionary programs, it becomes apparent that any such proceeding short of the conviction or acquittal stage does not operate to discharge a surety, absent a specific order of the court or a proper surrender of the defendant into custody. R. 3:26-7. Hence, suspension of the proceedings under a pretrial diversionary program, either by rule (such as R. 3:28) or by statute (such as that here involved) does not constitute contractually, a "final determination", operating to discharge a surety.
Not at issue here is whether after conviction, imposition of a suspended sentence, suspension of execution of a sentence or a term of probation would operate to discharge a surety. Moreover, the question of whether a new recognizance is required pending appeal of a final judgment of conviction and sentence is not here considered.
We are cognizant that there is authority to support an argument that any action by the court or the State which increases the risk of the surety will result in an exoneration. See 8 C.J.S. Bail § 78 at 214. This position can be sustained by the basic theory that where such action extends the time for "final determination" indefinitely, it unilaterally *604 works an alteration in the original contract provision and amounts to breach of contract. In re Marshall's Estate, 416 Pa. 64, 204 A.2d 243 (Sup. Ct. 1964); Miller v. Miller, 211 Pa. Super. 198, 235 A.2d 426 (Super. Ct. 1967). Cf. U.S. v. Egan, 394 F.2d 262 (2 Cir.1968). However, these principles, although valid applications of basic contract law, are inapposite here. Pretrial diversionary programs presently in effect all provide for maximum time periods, after the expiration of which the criminal proceedings must either be terminated or continued to some final disposition. The mere lapse of time resulting from participation in such programs will not work an exoneration or discharge of the bail obligation. As previously noted, during any interim the surety may apply for the court order necessary to terminate liability. R. 3:26-7; State v. Gonzalez, supra.
In light of the foregoing, the motion for discharge or exoneration is denied. Further, since the principal has not yet been apprehended, the court is unable to fairly determine at this time whether any remission of the forfeiture is warranted pursuant to R. 3:26-6. See State v. Peace, 63 N.J. 127 (1973); State v. Hyers, 122 N.J. Super. 177 (App. Div. 1973).
NOTES
[1] In practice, where the accused is "paroled" in a pending criminal action, rather than admitted to bail, the release from custody is effected solely upon his promise to appear when required. Cf. Black's Law Dictionary, 4th Ed. (1951).
[2] Silvers v. State, 59 N.J.L. 428 (E. & A. 1897), and State v. Hancock, 54 N.J.L. 393 (Sup. Ct. 1892), appear to be the only relevant precedents in New Jersey. In those cases additional language contained in the bond mandated that the defendant "not depart said court without leave." 59 N.J.L. at 430; 54 N.J.L. at 398. While this condition is not an express provision of our modern recognizance, it may be readily implied by the present general terminology alluded to above.