**UNITED STATES of America**

v.

**Humberto MARTINEZ, Surety Insurance Company and Cal Rynerson, Appellants in 79–1189.**

**Appeal of ALLEGHENY MUTUAL CASUALTY CO., in 79–2696.**

**Nos. 79–1189, 79–2696.**

United States Court of Appeals, Third Circuit.

Argued Oct. 10, 1979.

Decided Jan. 14, 1980.

---

Alvin S. Michaelson (argued), Beverly Hills, Robert J. Del Tufo, U. S. Atty., Newark, N. J., for appellants; Samuel A. Alito, Jr. (argued), Asst. U. S. Atty., Newark, N. J., on brief.

Before ADAMS, ROSENN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

We must decide in this appeal when a surety's obligation on a bail bond terminates, as well as how and by whom a surety's obligation may be discharged. The original defendant in this case failed to surrender to serve his sentence after his criminal conviction was affirmed by this Court.[1] From a default judgment, entered by consent, ordering forfeiture of the appearance bond, Allegheny Mutual Casualty Company (Allegheny Mutual) appeals[2] on the grounds that (1) the bond by its terms was not valid through appeal, (2) if it were, the surety's obligation was released by the action of the clerk of the district court purporting to cancel the bond, and (3) even assuming that the release was a mistake, the bond could not be reinstated under the court's power to correct clerical errors. We hold that the bail bond continued in effect while the conviction was on direct appeal and, inasmuch as the clerk's cancellation of the bond was mistaken and there is no evidence of reliance on the clerk's cancellation, the bond could be reinstated by the district court and must now be forfeited because of Martinez's failure to appear for incarceration pursuant to his sentence.

1. *United States v. Martinez*, 547 F.2d 1165 (3d Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 223 (1977).

2. The initial appeal by Rynerson and Surety Insurance Company was dismissed on jurisdictional grounds for want of a final order. 582 F.2d 1277 (3d Cir. 1978). The appeals of Rynerson, Surety Insurance Company, and Allegheny Mutual have been consolidated and are now before us after a default judgment was entered by consent against Allegheny Mutual.

## I.

The genesis of this dispute may be traced to the arrest of Humberto Martinez for selling heroin. The magistrate before whom Martinez appeared originally set bail at $25,000. After several days in detention, Martinez obtained a surety for his bail bond, which was signed by Martinez, by an attorney-in-fact for Allegheny Mutual, and by a magistrate on behalf of the government. As security for the bond, the surety was given a deed for property in California owned by Martinez's wife. The interest of Allegheny Mutual in the bond was later purchased by Cal Rynerson, as agent for Surety Insurance Company.

Martinez appeared in the district court at all times required of him up to and including sentencing. The penalty imposed consisted of two concurrent terms of fifteen years, followed by a special parole term of ten years. At the request of Martinez's lawyer, who now represents the surety, the trial judge continued bail on appeal in the same amount. This decision by the trial judge was based on Martinez's perfect record in appearances at trial, on the fact that security worth $25,000 had been posted, and on counsel's assurance that the bond was "good through appeal."[3]

While the criminal conviction was on appeal in this Court and Martinez was out on bail, a secretary in the United States Attorney's office mistakenly sent a form letter to the clerk of the district court instructing the clerk to cancel the bond. The letter was not signed by the United States Attorney but, apparently following standard procedure, the clerk stamped "cancelled of record" on the face of the bond and sent a certificate of discharge to Rynerson.

District Court's Order No. 75-44 (D.N.J. Oct. 9,1979). Because Allegheny Mutual is the only party against whom a judgment has been entered, it will be used in text to stand for all the appellants.

3. According to the transcript, the trial judge asked counsel for Martinez, "Is this bond good for appeal?" The answer was, "Absolutely. Yes, it is good through appeal."

After a panel of this Court affirmed the conviction of Martinez and the Supreme Court denied certiorari,[4] the district judge issued an order for the defendant to surrender. Martinez failed to appear, and a bench warrant for his arrest has so far not brought about his apprehension.

Well over a year after the purported cancellation of the bond, the United States Attorney discovered the error and moved, albeit without notice to the defendant's attorney or to the surety, for reinstatement of the bond. In granting the motion, the district court declared that the bond had been "erroneously cancelled at the request of . . . the United States Attorney without the approval or Order of this Court."

Shortly thereafter, counsel for Martinez filed a motion on behalf of the surety to vacate the order of the district court reinstating the bond. Following a hearing at which Cal Rynerson was the sole witness, the motion to vacate was denied. Rynerson testified that he retained the deed for the California property serving as security for the bond and that this property was probably worth more than the face amount of the bond, so that he was fully indemnified against forfeiture of the bond. Finding that "there is no prejudice to the Surety with respect to the reinstatement of the bond since the Surety still has ample security to cover its obligations," and that the security was the property "of the absconding defendant," the district court denied the motion to vacate the reinstatement of the

bond. The judge stated that the cancellation was a clerical error which the court could correct under Fed.R.Crim.P. 36, that the clerk lacked the authority to release the surety, and that the surety must have realized that the clerk's action was mistaken and improper.

## II.

### A.

■ A bail bond is essentially a contract between the government on the one hand, and a principal and his surety on the other.[5] The extent of each party's undertaking therefore depends on the wording of the agreement and the intention of the parties as interpreted within the general framework of suretyship and contract law.[6] Generally, the terms of a bail contract are to be strictly construed in the surety's favor, and the surety may not be held liable for any greater undertaking than he has agreed to.[7] As with any other contract, the controlling consideration in interpretation is "the reasonable intentions of the parties."[8]

### B.

■ Courts of appeals have disagreed on the question whether federal or state law governs the interpretation of bail bonds filed with federal courts. Those holding that state law applies simply assert in conclusory fashion that a contract should be interpreted according to the law of the state in which it was made.[9] The Court of Appeals for the Second Circuit, however,

---

4. *See* note 1 *supra.*

5. *United States v. Miller*, 539 F.2d 445, 447 (5th Cir. 1976) (per curiam); *United States v. D'Anna*, 487 F.2d 899, 900 (6th Cir. 1973); *United States v. Jackson*, 465 F.2d 964 (10th Cir. 1972).

6. *United States v. Miller*, 539 F.2d at 447.

7. *United States v. Miller*, 539 F.2d at 447 (citing *United States v. Eisner*, 323 F.2d 38, 43 (6th Cir. 1963)). This is a reflection of two factors: (a) federal bail bonds are of a standard form drafted by the Government, and (b) the common law rule that "[i]n choosing among the reasonable meanings of a[n] . . . agreement, that meaning is generally preferred

which operates against the party who supplies the words. . . ." Restatement of Contracts (2d) § 232 (Tent. Draft No. 5 Mar. 31, 1970).

8. *United States v. Gonware*, 415 F.2d 82, 83 (9th Cir. 1969), *quoted in United States v. Miller, supra; accord, United States v. Dinneen*, 577 F.2d 919, 921 (5th Cir. 1978).

9. *See United States v. D'Anna*, 487 F.2d 899, 900–01 (6th Cir. 1973); *United States v. Gonware*, 415 F.2d 82, 83 (9th Cir. 1969); *Palermo v. United States*, 61 F.2d 138, 140 (8th Cir. 1932), *cert. denied*, 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933).

has held that federal common law should be applied because "[f]ederal regulation of bail procedures in the federal courts is pervasive, . . . federal bail bonds may have distinctive features not found in state bonds," and "federal fiscal interests are affected." Moreover, although the need for national uniformity and certainty is not entirely compelling, since bail practices may differ from district to district, "there is nothing 'peculiarly local' about bail bond law, nor would any important state policies be affected by a decision to apply federal law to bail bonds in federal court." *United States v. Catino*, 562 F.2d 1, 2 (2d Cir. 1977); *accord, United States v. Miller*, 539 F.2d 445, 448–49 (5th Cir. 1976) (per curiam).

The question which law to apply may be academic on this appeal, for there is no New Jersey case law that addresses the issue presented.[10] In *State v. Rice*, 137 N.J.Super. 593, 350 A.2d 95 (Essex County Ct. 1975), *aff'd mem.*, 148 N.J.Super. 145, 372 A.2d 349 (App.Div.1977), a New Jersey court merely held that a surety would not be released by any trial court action short of acquittal or conviction. It specifically did not consider the question whether "after conviction, imposition of a suspended sentence, suspension of execution of a sentence or a term of probation would operate to discharge a surety" or "whether a new recognizance is required pending appeal of a final judgment of conviction and sentence." *Id.* 137 N.J.Super. at 603, 350 A.2d at 101.

It is therefore unnecessary to decide whether federal or state law controls. Moreover, it is not a disagreement over the principles of contract law governing the interpretation of bail bonds, but one over the application of these principles to the facts, that has divided the federal courts on the question whether bail bonds continue through appeal. The applicable principles are indeed noncontroversial: the plain meaning of the agreement supplemented, if necessary, by any intention of the parties that may be gleaned from the circumstances.[11] We look first, then, to the terms of the bond.

C.

The bond in this proceeding, which is of standard form, contains three paragraphs. The first recites as a condition of the undertaking that the defendant appear before the United States District Court for New Jersey or any other district to which the case is removed. It then provides that "the defendant is to abide any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe." The important language of the second paragraph is that "[i]f the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith." The third paragraph states: "It is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated."

Difficulty arises because two courts of appeals, both following the same precedent and claiming to have ascertained the plain meaning of the bond, have disagreed on the very issue we must decide.[12] In *United States v. Miller*, 539 F.2d 445, 449 (5th Cir. 1976) (per curiam), the Fifth Circuit held that by the language of the bond, the surety's liability "may be extended to cover reasonably brief postponements of the execution of sentence." It noted the surety's

---

10. Because the Court has not been apprised of the terms of the "recognizance" bonds issued in New Jersey courts, it is uncertain whether a decision of a New Jersey court would be helpful in interpreting the bail bond before us, which is of a standard form issued by the Administrative Office of the United States Courts.

11. *See* p. 476 & n. 5–8 *supra*.

12. *Compare United States v. Catino*, 562 F.2d 1 (2d Cir. 1977) (bond continues through appeal) *with United States v. Dinneen*, 577 F.2d 919 (5th Cir. 1978) (bond effective only for district court proceedings).

argument that "once a sentence of incarceration has been pronounced all hope of parole vanishes and the risk of flight is materially increased. [The surety contended] that this increased risk—which it says is not within the contemplation of the parties—may not be imposed upon the surety without his specific consent." Id. at 448. Nevertheless, the court held that "when, as here, the bond states that the principal is to surrender himself for execution of the sentence and to abide by orders of the court in connection with judgment, the pronouncement of sentence does not exonerate the surety, who remains liable during any reasonable postponement of sentence." Id.

In United States v. Catino, 562 F.2d 1 (2d Cir. 1977), the Second Circuit extended the rationale of Miller in holding that the language of the bail bond covers any appellate review of the conviction. Of decisive significance to the Catino court was the provision that the bond was to "continue in full force and effect" until exoneration, and that the defendant must surrender "to serve any sentence imposed." [13] Exoneration, the court said, was defined by Fed.R. Crim.P. 46(f), which provides that "When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail." Catino also reasoned that if the surety felt that release on bail pending appeal was more than it had bargained for, it could always, pursuant to 18 U.S.C. § 3142 (1976), arrest the defendant and rid itself of responsibility for him. Noting that the Miller court seemed unconcerned about the increased risk of flight during a brief postponement of sentence, the Second Circuit discounted any worsening of the chance of flight while an appeal is taken. See id. at 3.

A subsequent panel of the Fifth Circuit, in United States v. Dinneen, 577 F.2d 919 (5th Cir. 1978), disagreed with the Second Circuit's Catino opinion and held that the bail bond was not good through appeal. It continued, however, the attempt to decide bail bond cases by a careful parsing of the language of the contract. Dinneen narrowly construed the circuit's prior decision in Miller to hold that an extension of any appearance bond could cover only " 'reasonably brief postponements of the execution of sentence.' " 577 F.2d at 921 (emphasis in original). As its main analytical point, the Fifth Circuit emphasized the first paragraph of the bond agreement, which makes reference to appearances in the district court and ends with the requirement that the defendant appear in accordance with any orders and directions " 'relating to the defendant's appearance in the above entitled matter.' " 577 F.2d at 921 (emphasis in original).[14] The court explained:

> The above entitled matter, to which the entire bond alludes, is [United States v. Dinneen], United States District Court for the Southern District of Florida. This is a bond intended as a guarantee of the defendant's appearance in relation to the proceedings of the trial court for the Southern District of Florida—not in relation to the proceedings of the Fifth Circuit Court of Appeals.

**D.**

We do not find this reasoning persuasive. The reference to defendant's appearance in the district court is not a specific term to be given precedence in interpreting the contract's general provisions.[15] Rather, it simply iterates the obvious fact that parties are rarely required to appear before an appellate court. Indeed, if an appellate bond were to be executed—as, for example, if the

---

**13.** Id. at 4. This language was also considered decisive in United States v. Marquez, 564 F.2d 379, 380 (10th Cir. 1977) (nominally relying on Colorado law; bail bond still effective when continued by court pending sentencing but new trial eventually ordered); and United States v. Wray, 389 F.Supp. 1186, 1192 (W.D.Mo.1975) (bond valid on appeal).

**14.** Cf. Restatement (2d) of Contracts § 229 (Tent. Draft No. 5 Mar. 31, 1970) ("In the interpretation of [an] . . . agreement or a term thereof, . . . (c) specific terms and exact terms are given greater weight than general language. . . .")

**15.** See note 14 supra.

amount of the bond were increased on appeal—reference would still be made to an appearance before the district court to obey the final order.[16]

Moreover, the criminal case to which the bond refers cannot be restricted to the district court proceedings. Criminal cases are often appealed, and remands for additional procedures are not infrequent. A criminal proceeding continues until the judgment is obeyed or any direct appeal is completed; before that time, the conviction may be reversed or the sentence modified or changed.[17]

It is for this reason that the risk of flight while a case is on appeal is not necessarily greater than that during a brief stay of execution of sentence. During appeal, a defendant still has some hope that his conviction will be overturned. With only a stay of execution, on the other hand, a defendant has acknowledged that he will go to prison, and so the temptation to flee should, in many cases, be greater than if an appeal is in process. We therefore agree with the Second Circuit's interpretation of *Miller*: if the increased risk of flight does not count against interpreting the bail bond to cover a reasonably brief stay, it should not inexorably weigh against the bond's being valid on appeal.

The reference to an appearance in the district court does not negate or modify the terms stating "that the defendant is to abide any judgment entered . . . by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe," and that "[i]t is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated." [18] Defendant Martinez has *not* surrendered to serve his sentence, did *not* obey the district court's order, and therefore has *not* been exonerated.[19]

**E.**

Our conclusion that Martinez's bond was valid through appeal is reinforced by the policy implications of a contrary result.[20] Sureties in these cases have argued that because the risk of defendant's "jumping" bail significantly increases after conviction, they should not be held liable for bonds on appeal. Indeed, they argue that the fact of such an increase in risk indicates that it could not have been their intention in agreeing to serve as surety that the bond be good on appeal.

Courts have generally acknowledged the augmented risk of flight after sentencing, but assumptions as to that factor's relevance have gone unchallenged because the factor has been subordinated in importance to the task of interpreting the plain meaning of the contract.[21] Assessment of the likelihood that a defendant will not appear when required, however, is the responsibility in the first instance of the judge rather

---

**16.** In the Eastern District of Pennsylvania, a special "Bail Bond on Appeal" is executed when the amount of bail is increased while the appeal is pursued. The agreement refers to the appeal, but refers as well to the appearance before the district court upon the filing of a mandate showing the appellate court's determination.

**17.** *See United States v. Gonware*, 415 F.2d 82, 84 (9th Cir. 1969).

**18.** In response to the *Dinneen* decision, the Administrative Office of the United States Courts distributed to the district courts a new standard form appearance bond that makes clear the new bond's validity on appeal. The last sentence now reads: "It is agreed and understood that this is a continuing bond (*including any proceeding on appeal or review*) which shall continue in full force and effect until such time as the undersigned are duly exonerated." (emphasis added).

**19.** Fed.R.Crim.P. 46(f) provides that "the court shall exonerate the obligors and release any bail" "when the condition of the bond has been satisfied."

**20.** *See* Restatement (2d) of Contracts § 233 (Tent. Draft No. 5 Mar. 31, 1970) ("In choosing among the reasonable meanings of [an] . . agreement or a term thereof, a meaning that serves the public interest is generally preferred.")

**21.** *See e. g., United States v. Catino*, 562 F.2d 1, 4 (2d Cir. 1977); *United States v. Miller*, 539 F.2d 445, 448–49 (5th Cir. 1976).

than the surety. The amount set for bail is tailored to the judge's evaluation of the risk.

All other things being equal, of course, the possibility that a defendant will not surrender to serve his sentence increases after conviction, inasmuch as the defendant's calculation of his chances of being set free on appeal will adjust to the knowledge that the trier of fact has found him guilty. But all other things are not equal after a lengthy trial. The district judge has had the opportunity to observe the defendant. The dependability of the defendant in making all court appearances is known, as is the strength of the defendant's case. Testimony at the trial may provide the judge with more information than was available at the arraignment as to the defendant's affiliations in the community. Finally, the district judge will have some idea, however influenced by self-interest it may be, of the likelihood of the defendant's success on appeal. All of these elements may be considered in the judge's new calculus of the risk that the defendant will not appear as ordered upon conclusion of the appeal.

It is apparent from the record that these considerations influenced the trial judge here. After the assurance from Martinez's lawyer that the existing bond was good through appeal, the judge responded to the prosecution's query as to the sufficiency of bail in light of the sentence imposed. Both the judge and the attorney had already conceded that Martinez had "a good legal issue to take to the Court of Appeals." Noting that the defendant had made every appearance even though "[h]e had to expect some substantial sentence if he were convicted," and that security worth $25,000 had been posted, the judge continued bail at the same amount. The reasonable inference is that the increased probability of flight after conviction was discounted because of other factors, and the surety therefore was not subjected to a greater risk of liability on appeal than it had bargained for.

The burden that would be imposed on defendants if we were to hold that separate bonds must always be executed on appeal is also of concern. Each time a bond is executed, the surety collects a new premium representing a set percentage of the amount of the bond. If a bond on appeal must be executed even though its amount is the same as the original bond, the defendant would have to pay another premium even though the judge had determined that the risk of flight had not, all things considered, increased. The effect on the defendant would thus be the equivalent of an increase in the amount of the bond.

A surety in New Jersey, at least,[22] may set whatever premium on bail bonds the market will bear. Because of the straitened situation that most criminal defendants are in, sureties will, in the absence of government regulation, be in a position of great bargaining power vis-a-vis the defendant. When a trial judge has implicitly determined, by continuing bail at the same amount, that the risk of flight is no greater on appeal than during trial, the surety should not automatically be allowed to collect another premium. If sureties wish to make independent risk calculations in their dealings with criminal defendants they may attempt to do so, but we are reluctant to do this for them by operation of law in interpreting the bail bond agreement. We pass, then to Allegheny Mutual's argument that even if the bond were valid through appeal, the action of the district court clerk was an effective cancellation.

### III.

Allegheny Mutual argues that even if the bond is effective on appeal, the surety's obligation was discharged by action of the clerk of the district court. Acting on a letter from a secretary in the United States Attorney's office one and a half months

---

**22.** New Jersey sets no maximum premium that a surety may charge on a bail bond, as compared with, e. g., Pennsylvania, which does. See 42 Pa.Con.Stat.Ann. § 5748(a) (1978 pamphlet) ("No professional bondsman shall charge a premium or compensation for acting as surety on any undertaking in excess of 10% for the first $100, and 5% for each additional $100 of such undertaking.")

after the district judge had explicitly continued the bond, the clerk of the court stamped the bond "cancelled of record" and sent notice thereof to Rynerson. The clerk, Allegheny Mutual asserts, had authority to cancel the bond under the District of New Jersey's Local Rule 35B(2), which states that "upon termination of a criminal proceeding, the clerk shall cancel the appearance bond." If the clerk is properly deemed the agent of the court for the purpose of discharging the surety's obligation, then the clerk's stamping the bond "cancelled" may be, without any assent or response from the surety, sufficient to discharge the bond.[23]

The Government counters, however, that Local Rule 35B(2) is merely a housekeeping rule prescribing internal procedures having no binding effect on outside parties. Furthermore, the Government insists, the Federal Rules of Criminal Procedure make clear that only the court may exonerate the obligors of a bail bond. Local rules may not delegate authority in a manner inconsistent with the federal rules, and therefore Local Rule 35B(2) does not confer authority—either actual or apparent—to release obligations on the bond without an order of the court.

■ Actual authority has been defined as "[the authority] that the principal expressly or implicitly gave the agent."[24] Apparent authority " 'is power to bind the principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted.' "[25]

In determining whether a relationship of principal and agent existed between the district court and its clerk with regard to release from bail bond obligations, we are guided by two propositions: (1) The surety is charged with knowledge of the district court's continuation of bail even though the surety was not present.[26] (2) If the surety intends to claim Local Rule 35B(2) in justifying reliance on a purported agency relationship, it must also be charged with knowledge of Fed.R.Crim.P. 46(f), which provides: "When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, *the court shall exonerate the obligors and release any bail.*" (emphasis added).

■ Because the court in this case explicitly continued bail pending appeal, the district court clerk did not have actual authority to cancel the bond.[27] The authority delegated to the clerk is notification of third parties as to the court's actions. To establish that the court was bound by the clerk as its apparent agent, the surety would have to show reliance on the clerk's assertedly apparent authority.[28] The district judge was solicitous of the surety in this matter and clearly stated that had any detrimental reliance on the clerk's mistake been shown—as, for example, if the surety had released the property it held as security on the bond—the bond may not have been reinstated. Neither before the district court nor before this Court has the surety

---

**23.** *See* Restatement (2d) of Contracts § 344 (Tent. Draft No. 13 Mar. 1, 1978) ("An obligee's cancellation . . . of a writing of a type customarily accepted as evidence of his right discharges without consideration the obligor's duty if it is done with the manifested intention to discharge it."); *Id.* § 345 ("If a party, when performing his duty under a contract, manifests to the other party his assent to discharge the other party's duty to render part or all of the agreed exchange, the duty is to that extent discharged without consideration.")

**24.** *Lind v. Schenley Ind., Inc.*, 278 F.2d 79, 85 (3d Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960).

**25.** *William B. Tanner Co., Inc. v. WIOO, Inc.*, 528 F.2d 262, 266 (3d Cir. 1975).

**26.** *Stuyvesant Ins. Co. v. United States*, 410 F.2d 524, 526 (8th Cir.) *cert. denied*, 396 U.S. 836, 90 S.Ct. 96, 24 L.Ed.2d 87 (1969); *United States v. Wray*, 389 F.Supp. 1186, 1191 (W.D. Mo. 1975).

**27.** The court neither expressed nor implied that it wanted its clerk to cancel the bond. *See* H. Reuschlein & W. Gregory, Agency and Partnership § 14, at 36 (1979).

**28.** *See* Restatement (2d) Agency § 8, Comment d, at 33 (1958) (reliance "required when the claim is based upon apparent authority").

alleged any reliance, detrimental or otherwise, on the clerk's action.[29]

In sum, the clerk's cancellation of the bond was a mistake inasmuch as the judge had clearly ordered bail continued on appeal. Not only was the clerk without actual authority to discharge the surety's obligation, but also the reliance required for an assertion of apparent authority was absent. The district judge therefore acted within his discretion in ordering the bond reinstated, pursuant to his power to correct clerical errors under Fed.R.Civ.P. 60(a) or Fed.R.Crim.P. 36,[30] and in ordering the bond forfeited.

### IV.

The judgment of the district court will be affirmed; each side to bear its own costs.

---

**29.** We need not reach the question whether it would have been reasonable for the surety to rely on the clerk's cancellation.

**30.** The action on the bond is a civil proceeding, though it arises from a criminal one. *United States v. Plechner*, 577 F.2d 596, 597 (9th Cir. 1978).