IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 35772

| STATE OF IDAHO, | ) | 2010 Opinion No. 12S |
|---|---|---|
| | ) | |
| Defendant-Respondent, | ) | Filed:  March 4, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TWO JINN, INC., | ) | SUBSTITUTE OPINION |
| | ) | THE COURT'S PRIOR OPINION |
| Real Party in Interest-Appellant | ) | DATED FEBRUARY 26, 2010, |
| | ) | IS HEREBY WITHDRAWN |
| and | ) | |
| | ) | |
| LARRY GRANT DANA, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County.  Hon. Stephen W. Drescher, District Judge.

Order denying motion to set aside forfeiture and exonerate bond, <u>reversed</u> and case <u>remanded</u>.

Susan M. Campbell, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mary K. Magnelli, Deputy Attorney General, Boise, for respondent.  Mary K. Magnelli argued.

_____

GUTIERREZ, Judge

Two Jinn, Inc. appeals from the district court's denial of its motion to set aside forfeiture and exonerate bond.  For the reasons set forth below, we reverse and remand.

## I.

## FACTS AND PROCEDURE

On December 4, 2007, Two Jinn, Inc. d/b/a Aladdin Bail Bonds/Anytime Bail Bonds (Two Jinn) posted a $5,000 bond for Larry Grant Dana, Jr. who had been charged with failure to register as a sex offender in violation of Idaho Code § 18-8309.  When Dana did not appear at his January 23, 2008, pretrial hearing, his attorney advised the district court that Dana was coming

from out of town and had encountered transportation problems. The court then issued a notice of forfeiture of the bond and a bench warrant, but stayed execution of the warrant until February 12, 2008, when the jury trial was to commence. Notice of the forfeiture, including an indication that the bench warrant had been stayed, was mailed to Two Jinn on January 25.

After receiving the forfeiture notice, Two Jinn employed Northwest Surety Investigators, Inc. (NSI) to locate Dana. According to an affidavit filed by an NSI employee, the case was initially assigned to the "pre-investigations unit" which "conducted court calls, jail checks and completed preliminary investigation by attempting to contact the Defendant's family, friends, employers, and co-signor and by following up on secondary leads generated off of the original application." The employee further averred that because the bench warrant had been stayed, the case was not assigned to an NSI investigator until February 4.

When Dana again failed to appear in court on February 12, the court ordered execution of an active bench warrant, setting bond at $50,000. On July 21, 2008, 180 days after the notice of forfeiture was issued, Two Jinn filed a motion to set aside forfeiture and exonerate bond, contending that the court failed to issue a bench warrant at the time of forfeiture as required by statute and interfered with Two Jinn's ability to locate and surrender Dana. The state filed an objection to the motion and after holding a hearing, the district court denied the motion. Two Jinn now appeals.

## II.

## ANALYSIS

Two Jinn contends that the district court abused its discretion in denying its motion to set aside the bond forfeiture where the interests of justice required the exoneration of the bond. More specifically, Two Jinn argues that the district court breached the bond contract by deviating from the statutory requirement that it issue an active bench warrant at the time it forfeited the bond and that Two Jinn was prejudiced by this action.

At the time Two Jinn's motion to set aside forfeiture and exonerate bond was at issue, I.C. § 19-2927 and Idaho Criminal Rule 46 governed the forfeiture, relief from forfeiture, and exoneration of bail.[1] In relevant part, I.C. § 19-2927 stated:

---

[1] Effective July 1, 2009, I.C. § 19-2927 was repealed by S.L. 2009, ch. 90, § 1 and replaced by the Idaho Bail Act, I.C. § 19-2901 *et. seq.*

If, without sufficient excuse, the defendant fails to appear before the court upon any occasion when his presence has been ordered the court must immediately direct the fact to be entered upon its minutes, order the forfeiture of the undertaking of bail, or the money deposited instead of bail, as the case may be, and order the issuance of a bench warrant for the arrest of the defendant. The clerk shall mail written notice within five (5) days of the forfeiture for failure to appear to the last known address of the person posting the undertaking of bail or, if the bail consists of a surety bond, to the surety or its designated agent. A failure to give timely notice shall exonerate the bail or undertaking. If at any time within one hundred eighty (180) days after such entry in the minutes, the defendant appears and satisfactorily excuses his neglect, the court shall direct the forfeiture of the undertaking or the deposit to be exonerated.

If, within one hundred eighty (180) days of the date of forfeiture, a person, other than the defendant, who has provided bail for the defendant, surrenders the defendant to the jail facility of the county which issued the warrant, the undertaking of bail or deposits are thereby exonerated.

Idaho Criminal Rule 46 provides in pertinent part:

(e) **Forfeiture and Enforcement of Bail Bond**. The court which set the amount of a bail bond may order the forfeiture and enforcement of the bail bond in any of the following manners:

(1) In the event a defendant fails to appear before the court at the time required as a condition of bail, and the court finds that such failure is without sufficient cause, or where no evidence is presented which would provide sufficient cause, the court shall immediately ex parte forfeit the bail and issue a bench warrant for the defendant.

. . . .

(4) The court which has forfeited bail before remittance of the forfeiture may direct that the forfeiture be set aside upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

. . . .

(5) After the court enters the order forfeiting bail, the clerk must, within five (5) days, mail a written notice of forfeiture to the last known address of the person posting the undertaking of bail or, if the bail consists of a surety bond, to the surety or its designated agent. If the defendant does not appear or is not brought before the court within one hundred eighty (180) days after the entry of the order forfeiting bail, the clerk, upon receiving payment of the forfeiting bail, shall remit such forfeiture to the county auditor . . . .

. . . .

(g) **Exoneration of Bail**. When the conditions of bail have been satisfied, or if the clerk fails to mail a written notice to the person posting the undertaking of the bail or, if the bail consists of a surety bond, to the surety or its designated agent within five (5) days of the order of forfeiture, the court shall then discharge the bail, exonerate sureties, and release any cash bonds or property deposited with the court. If the defendant appears or is brought before the court within one

hundred eighty (180) days after the order forfeiting bail, the court shall rescind the order of forfeiture and shall exonerate the bond.

Thus, aside from the circumstances in which a court is compelled to exonerate bond, a court *may* exonerate a bond if it appears that justice does not require the enforcement of the forfeiture.[2] In general, a trial court has discretion over bond forfeiture matters, and we review such decisions for abuse of discretion.[3] *State v. Vargas*, 141 Idaho 485, 111 P.3d 621 (Ct. App. 2005). However, where, as here, the issue includes an inquiry into whether a district court met its statutory duties before forfeiting bail, there also exists a question of statutory interpretation over which we exercise free review. *State v. Plant*, 130 Idaho 130, 132, 937 P.2d 442, 444 (Ct. App. 1997).

Since Two Jinn's primary contention that the district court abused its discretion in refusing to exonerate the bond rests on its allegation that the court deviated from the bond forfeiture statute, we address that question first. In countering this argument, the state contends that the court did, in fact, comply with its statutory duties despite the fact that it stayed the execution of the bench warrant, because upon Dana's failure to appear, it did issue a bench warrant. That the court then stayed the warrant is immaterial, the state argues, because "there is nothing in the statute that requires the bench warrant also be executed."

When called upon to interpret a statute, we begin with an examination of its literal words. *State, Dep't of Health Welfare ex rel. Lisby v. Lisby,* 126 Idaho 776, 779, 890 P.2d 727, 730 (1995); *State v. McKeeth,* 136 Idaho 619, 628, 38 P.3d 1275, 1284 (Ct. App. 2001); *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). The statutory language is to be given its plain, obvious, and rational meaning. *Lisby,* 126 Idaho at 779, 890 P.2d at 730. A

---

[2] We note that discretion on exoneration of bond as between Idaho Code § 19-2927 and I.C.R. 46 is respectively phrased as "if without sufficient excuse, the defendant neglects to appear" and "if it appears that justice does not require the enforcement of the forfeiture." While Two Jinn emphasizes the language in the rule, the distinction is of no consequence in addressing the instant appeal.

[3] The state argues that the district court "was not presented with an issue requiring an exercise of discretion" because a district court's action in staying the execution of a bench warrant issued pursuant to Idaho Code § 19-2927 is "not a discretionary matter." Even if we were to accept the state's premise that staying a bench warrant is not a matter of the court's discretion, the decision which Two Jinn argues was an abuse of discretion was not the issuance of the stay, but the denial of its motion to exonerate the bond in light of its stay of the bench warrant.

4

statute is to be construed as a whole without separating one provision from another. *State v. Olson,* 138 Idaho 438, 440, 64 P.3d 697, 699 (Ct. App. 2003). In attempting to discern and implement the intent of the legislature, a court may seek edification from the statute's legislative history and contemporaneous context at enactment. *Id.* However, if the statutory language is clear and unambiguous, a court need merely apply the statute without engaging in any statutory construction. *Id.* It is incumbent upon a court to give a statute an interpretation which will not render it a nullity. *Beard,* 135 Idaho at 646, 22 P.3d at 121. Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe,* 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager,* 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Applying the rules of statutory construction, we conclude the state's position that the district court did not contravene the statute is untenable. The plain language of the statute requires a district court to issue a bench warrant when forfeiting the bond--a requirement that furthers the primary purpose of a bail bond agreement which is to effectuate the defendant's presence in court to answer the charges brought by the state. *See State v. Quick Release Bail Bonds*, 144 Idaho 651, 655, 167 P.3d 788, 792 (Ct. App. 2007). Specifically, the statute states that "[i]f, without sufficient excuse, the defendant neglects to appear before the court upon any occasion when his presence has been ordered the court *must* immediately direct the fact to be entered upon its minutes, order the forfeiture of the undertaking of bail . . . and *order the issuance of a bench warrant for the arrest of the defendant*." (Emphasis added). To interpret the statute as then allowing a court to stay the bench warrant would essentially nullify the requirement that the bench warrant be issued immediately.

The state counters that the district court possessed the power to stay the execution of a bench warrant based on its "inherent authority" to "control its docket." However, allowing for an "inherent authority" override of the bond forfeiture statutory scheme would contravene our decision in *Vargas*, 141 Idaho at 488, 111 P.3d at 624, where we addressed whether the district court erred in refusing to grant a motion for extension of the enforcement of bond forfeitures, and held that:

> We are aware that Idaho courts have customarily granted motions for extension of the enforcement of bond forfeitures. *See State v. Abracadabra Bail Bonds*, 131 Idaho 113, 952 P.2d 1249 (Ct. App. 1998). . . . However, the validity of that practice was not the issue raised in those cases and, therefore, an Idaho appellate court has not previously addressed it.

Idaho Code Section 19-2927 does not provide Idaho courts with the authority to grant extensions. [Footnote omitted]. Therefore, we cannot find that the district court abused its discretion in denying [the appellant's] motion for an extension because the district court did not have the authority to grant a motion for an extension.

Likewise in this case, the statute did not provide the district court authority to stay the execution of the bench warrant, and thus we conclude that the court did not possess such authority. Furthermore, even if the court possessed such authority, the central question is whether the court's action hampered Two Jinn's ability to locate Dana and therefore requires that the bond be exonerated.

At the hearing on the motion to exonerate bond, Two Jinn asserted that the bond should be exonerated because it was prejudiced by the court's stay of the bench warrant. In denying Two Jinn's motion, the district court stated:

[A]s noted in the case law, the posting of a bond in these circumstances is one in the role of a surety. It's the surety obligation to fulfill their promise to deliver the person of the defendant at all court proceedings. It is not the luxury of the surety to rely upon law enforcement in a sister state to effect an apprehension of the defendant. It's the obligation of the surety to effect an apprehension of a defendant and to surrender him to the authorities of the State of Idaho.

On appeal, Two Jinn argues that the district court failed to recognize the issue as one of discretion, to act within the bounds of that discretion and consistent with applicable legal standards, and to arrive at a decision by exercise of reason. Initially, we disagree with Two Jinn's contention that the court failed to recognize the issue as falling within its discretion. While the court did not explicitly use the term "discretion," it is evident from the hearing transcript that the district court's decision was made as an exercise of discretion.

Turning to an examination of the applicable legal standards and whether the court issued a reasoned decision within those boundaries, we note that Two Jinn's core substantive argument is that the bond should have been exonerated because (1) the court's action in staying the bench warrant impeded Two Jinn's ability to investigate the case and return Dana to court, and (2) the court failed to meet its statutory duties by staying the bench warrant, thereby breaching the bond contract that exists between the state, the surety and the defendant.

Idaho courts have spoken to the contractual nature of bail bonds. In *State v. Abracadabra Bail Bonds*, 131 Idaho 113, 116, 952 P.3d 1249, 1252 (Ct. App. 1998), this Court stated:

A bail bond agreement is a suretyship contract between the state on one side and an accused and his or her surety on the other side, whereby the surety

6

guarantees the appearance of an accused. *United States v. Vaccaro,* 51 F.3d 189, 193 (9th Cir. 1995); *State v. Ericksons,* 106 N.M. 567, 746 P.2d 1099, 1099 (1987); 8 C.J.S. *Bail* § 4 (1988); 8 AM. JUR. 2D *Bail and Recognizance* § 1 (1980); *see also People v. Tyler,* 797 P.2d 22, 24-25 (Colo. 1990). The extent of the surety's undertaking is determined by the bond agreement and is subject to the rules of contract law and suretyship. *Vaccaro,* 51 F.3d at 193; *Tyler,* 797 P.2d at 24; *Ericksons,* 746 P.2d at 1099-100. Because it is a contract, existing law becomes part of the contract, as though the contract contains an express provision to that effect. *Robinson v. Joint Sch. Dist. # 150,* 100 Idaho 263, 265, 596 P.2d 436, 438 (1979) (extant law is written into and made part of every contract); *Rodriquez v. People,* 191 Colo. 540, 554 P.2d 291, 293 (1976) (bail statutes implicitly constitute part of the suretyship contract).

However, our courts have not yet addressed the effect of a court's failure to follow the requirements of the bail bond statutes in the context of a contract analysis and the remedy a party may be entitled to under contract law upon such a failure--questions which we must resolve here.

In the past, some courts placed heavy emphasis on the contract aspects of a bond agreement and held that any change, no matter how trivial, in the terms and conditions of the bond contract to which the surety has not consented will, under contract law, absolve the surety of its obligation under the bond contract. *See Changes in Terms or Conditions Under Which Accused in Federal Criminal Case Was Originally Released on Bail as Affecting Surety's Liability on Bail Bond*, 24 A.L.R. Fed. 580 (1975). However, the more common treatment today is an emphasis on the principle of suretyship law that a surety will be discharged or exonerated if the government (as the obligee under a bond contract) increases the surety's risk on the bond or impedes the surety's ability to produce and surrender the defendant. *See id. See also* RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, § 41 at 184-85 (1996);[4] RESTATEMENT (FIRST) OF SECURITY § 128(b) (1941).[5]

---

[4]     In relevant part, § 41, entitled "Modification of Underlying Obligation," states:

> If the principal obligor and the obligee agree to a modification, other than an extension of time or a complete or partial release, of the principal obligor's duties pursuant to the underlying obligation:
>
>     . . . .
>
>         (b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation:
>
>             (i) if the modification . . . imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to the modification . . . .

In practice, most courts today hold that an action by the court that materially changes the condition of the bond contract, and thereby materially increases the risk to the surety that it will forfeit the bond, terminates the obligation if the surety is unaware or refuses to consent to the changes. The Oklahoma Supreme Court recently summed up the concept thusly:

> [W]hen a bondsman enters into a contract of surety, he or she undertakes a calculated risk that the defendant will fail to appear. If the State, without notice or the consent of the bondsman, alters the terms of the bond agreement in a manner that materially increases the bondsman's risk, the alteration operates as a discharge of the bondsman's obligation. However, the alteration must be material and made without the bondsman's knowledge or consent to discharge the bondsman's obligation. An alteration is considered material when it changes the nature of the contract by placing the bondsman in a substantially different position than he or she occupied before the change was made.

*State v. Tyler*, 218 P.3d 510, 515 (Okla. 2009).[6]

In addition to the general rule articulated above, some courts have made it clear that a change in bond conditions causing a material increase in risk to the surety does not automatically

---

We note that the Restatement (Third) of Suretyship and Guaranty uses the term "secondary obligor" to refer to all sureties. *Wiegand v. State*, 768 A.2d 43, 50 n.7 (Md. 2001).

[5] In relevant part, § 128 states:

> Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment
> . . . .
> (b) the compensated surety is
>     (i) discharged if the modification materially increases his risk . . . .

[6] The following cases address, under varying circumstances, whether unilateral action by the state required discharge of a bond: *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994); *United States v. Egan,* 394 F.2d 262, 266 (2d Cir. 1968); *United States v. Martinez*, 613 F.2d 473 (3rd Cir. 1980); *Allstate Ins. Co. v. American Bankers Ins. Co. of Florida*, 882 F.2d 856, 862 (4th Cir. 1989); *United States v. Noriega-Sarabia*, 116 F.3d 417 (9th Cir. 1997); *United States v. LePicard*, 723 F.2d 663 (9th Cir. 1984); *U.S. v. Galvez-Uriarte*, 709 F.2d 1323, 1325 (9th Cir. 1983); *People v. Tyler*, 797 P.2d 22, 26-27 (Colo. 1990); *People v. Jones,* 873 P.2d 36 (Colo. App. 1994); *People v. Smith,* 673 P.2d 1026, 1028 (Colo. Ct. App. 1983); *Matt Howard Bail Bonds v. Escambia Cty Clerk of Court*, 13 So.3d 109, 111 (Fla. Dist. Ct. App. 2009); *Am. Bankers Ins. Co. v. Monroe County,* 644 So.2d 560, 561 (Fla. Dist. Ct. App. 1994); *Wiegand v. State*, 768 A.2d 43, 50 (Md. 2001); *State v. Ceylan,* 799 A.2d 685 (N.J. Super. 2002); *State v. Vaughn*, 11 P.3d 211, 213-14 (Okla. 2000); *State v. Chatfield*, 787 A.2d 1247, 1249 (Vt. 2001).

require exoneration--rather the surety must prove that a defendant's disappearance is attributed to the incremental risk associated with the change in conditions, as opposed to the original risk associated with posting bond for a defendant with an established propensity for flight. *See United States v. King*, 349 F.3d 964, 966 (7th Cir. 2003) (holding that authorization by the Court for King to travel abroad did not play a role in King vanishing after returning to New York. This risk of disappearance is exactly the one undertaken by the sureties); *State v. Sedam*, 122 P.3d 829, 831 (Kan. App. 2005) (holding that bond should be exonerated where the new condition imposed was supervision by pretrial services and the defendant failed a drug test given by pretrial services and then failed to report to pretrial services).

We are not, however, convinced that a purely contractual analysis is appropriate in analyzing alleged breaches of bond contracts in Idaho such that even a material breach by the state automatically requires exoneration. Such an approach would be inconsistent with Idaho's statutory scheme governing bonds--which only provides for mandatory exoneration in cases of deficient notice. By characterizing bond agreements as contractual in *Abracadabra Bail Bonds*, we did not intend to preclude consideration of other relevant factors. In *State v. Fry*, 128 Idaho 50, 910 P.2d 164 (Ct. App. 1994), this Court identified several factors for the trial court's consideration when ruling on whether to order forfeiture of all or part of a defendant's bail under I.C.R. 46(e)(4). We stated:

> In deciding how much, if any, of the bond to forfeit, the court should also consider: (1) the willfulness of the defendant's violation of bail conditions; (2) the surety's participation in locating and apprehending the defendant; (3) the costs, inconvenience, and prejudice suffered by the state as a result of the violation; (4) any intangible costs; (5) the public's interest in ensuring a defendant's appearance; and (6) any mitigating factors.

*Fry*, 128 Idaho at 54, 910 P.2d at 168. Subsequently, in *State v. Quick Release Bail Bonds*, 144 Idaho 651, 655, 167 P.3d 788, 792 (Ct. App. 2007), we noted that the *Fry* factors are not all-inclusive and that a trial court is free to give weight to other relevant factors. Thus, we conclude that the contractual nature of a bond agreement is another "relevant factor" in the context of Rule 46(e)(4) that should be considered--in addition to the *Fry* factors--by lower courts in their determination of whether exoneration of a bond is appropriate in the case of an alleged breach. Such an analysis may include inquiry into whether the state's breach materially increased the risk

to a surety as well as whether the forfeiture of a bond was actually caused by the alleged breach--both factors which are discussed in the case law we present above.[7]

In the present case, the district court erred by staying the issuance of the bench warrant in contravention of statute, and as a result, did not properly take this action into account when determining whether to exonerate the bond. Accordingly, we reverse the order denying Two Jinn's motion for exoneration of the bond and remand for reconsideration by the district court in light of the guidance we provide herein. The district court may, in its discretion, require an additional showing with regard to the factors relevant to its determination. Finally, we note that as the primary purpose of bail is not punitive, but rather is intended to ensure a defendant's presence in court, if the court determines that either forfeiture or exoneration of the entire amount would be inequitable, it may order partial exoneration of the bond. *Quick Release Bail Bonds*, 144 Idaho at 655, 167 P.3d at 792.

## III.

## CONCLUSION

The district court erred in staying the issuance of the bench warrant when it forfeited the bond. Because it did not take this into consideration when determining whether to exonerate the bond, and because we have provided additional guidance in regard to the applicability of contract law to the issue, we reverse the court's order denying Two Jinn's motion for exoneration and remand for reconsideration of Two Jinn's motion to set aside forfeiture and exonerate bond.

Judge GRATTON and Judge MELANSON **CONCUR**.

---

[7]     This "hybrid" approach is not unique in the criminal law context. Pertaining to the entry of guilty pleas, our courts have noted that while the contractual analogy has been utilized to interpret plea agreements, the contract model has its limits in the criminal law context. In declining to extend the unconscionability of contract to the analysis of plea agreements, our Supreme Court noted:

> The law of contracts presents an apt model to guide and inform our analysis in the context of the facts presented by this case. We emphasize, however, that we are not obliged to follow blindly the law of contracts in assessing plea or cooperation agreements in all contexts. Cases may arise in which the law of contracts will not provide a sufficient analogy and mode of analysis. We do not purport to superimpose contract principles upon all such cases.

*Dunlap v. State*, 141 Idaho 50, 63, 106 P.3d 376, 389 (2004) (quoting *United States v. Carrillo*, 709 F.2d 35, 36-37 n.1 (9th Cir. 1983)).

10