IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37933

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent | ) | |
| | ) | |
| v. | ) | |
| | ) | Boise, June 2011 Term |
| TWO JINN, INC., | ) | |
| | ) | 2011 Opinion No. 110 |
| Real Party in Interest-Appellant. | ) | |
| | ) | Filed: November 3, 2011 |
| | ) | |
| and | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |
| ROSENDO ARRIAGO NAVARRO, | ) | |
| | ) | |
| Defendant. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

District court's order affirming magistrate judge's order denying motion to exonerate bond, <u>affirmed.</u>

Nevin, Benjamin, McKay & Bartlett, Boise, for appellant. Robyn A. Fyffe argued.

Susan M. Campbell, Boise, for appellant Two Jinn, Inc.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Andrew J. Snook, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

This case comes before this Court on a petition for review from the Court of Appeals' decision. Two Jinn, Inc. (Two Jinn) seeks review of the district court's decision affirming the magistrate court's denial of Two Jinn's motion to set aside a bond forfeiture. Two Jinn argues that it demonstrated a defense of impossibility of performance based on the deportation of Rosendo Arriago Navarro (Navarro). Two Jinn also argues that the district court abused its discretion in failing to recognize that justice did not require enforcement of the forfeiture in this

1

case under former Idaho Criminal Rule 46(e)(4). We affirm the district court's decision that the magistrate court did not abuse its discretion in upholding the bond forfeiture.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2007, Navarro was arrested for driving without privileges. Navarro was released from custody when Two Jinn dba Aladdin Bail Bonds/Anytime Bail Bonds posted his $500 bail. After pleading guilty, Navarro was ordered to appear in court for sentencing on August 15, 2007. Navarro failed to appear for his sentencing hearing, the bond was ordered forfeited, and a bench warrant was issued for Navarro's arrest.

On February 6, 2008, 175 days after the bond had been forfeited, Two Jinn filed a motion to set aside that forfeiture and exonerate it from its liability on the bond, arguing that Navarro had been deported to Mexico and that it was, therefore, entitled to relief under the contract law doctrine of impossibility of performance. Two Jinn alternatively argued that the forfeiture should be set aside under former Idaho Criminal Rule 46(e)(4), on the ground that justice does not require enforcement of the forfeiture.

On February 28, 2008, Two Jinn's motion was argued at a hearing before the magistrate court. On March 6, 2008, the magistrate court issued its memorandum decision denying Two Jinn's motion. Two Jinn appealed this decision to the district court on April 16, 2008.

On January 2, 2009, the district court entered an order requiring the case to be heard as a trial de novo, solely on the issue of "how and why the Defendant, Navarro, was taken into the Ada County Jail on July 27, 2007." On February 11, 2009, the hearing was held, and new evidence was presented. The district court entered its decision on February 13, 2009, denying Two Jinn's motion. The Court of Appeals heard the case on appeal and issued an opinion on May 19, 2010, affirming the district court. This Court granted Two Jinn's petition for review on August 4, 2010.

## II. STANDARD OF REVIEW

When this Court reviews a case on a petition for review from a decision issued by the Court of Appeals, this Court gives the Court of Appeals decision due consideration, but directly reviews the decision of the trial court. *State v. Clements*, 148 Idaho 82, 84, 218 P.3d 1143, 1145 (2009). Where a district court acts as an appellate court reviewing the decision of a magistrate judge this Court will directly review the record developed by the magistrate judge to determine whether there is substantial and competent evidence to support the magistrate judge's findings of

2

fact and whether its conclusions of law follow from those findings. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

## III. ANALYSIS

### 1. Appealability

Pursuant to our inherent power under the Idaho Constitution Article V, § 9 and *State v. Rupp*, 123 Idaho 1, 843 P.2d 151 (1992), this Court finds in this case "the trial court's order denying exoneration of the bond in this case was a final order . . . ." 123 Idaho at 2, 843 P.2d at 152. Therefore we accept the appeal in this case but note for the future that there will be amendments to the Idaho Criminal Rules to address appealability of bond forfeitures.

### 2. Evidentiary Issue

The parties both filed their petitions for review objecting to the use of the Idaho Rules of Evidence in bail hearings. The comments to the Report of the Idaho State Bar Evidence Committee (1983) Article I "General Provisions" regarding the scope of the I.R.E. Rule 101(e) addresses areas where the Idaho Rules of Evidence are applicable. The rule names as inapplicable those "proceedings with respect to release on bail or otherwise." Further in the Comments to I.R..E. 101 it makes plain that proceeding under I.R.E. 101(e)(3) do not apply to "proceedings . . . including forfeiture and enforcement of bail bonds . . . ."

The Court however for purposes of this case does not need to make an exhaustive statement in that regard, for purposes of argument we accept Two Jinn's position that Navarro was deported. We find however this does not support exoneration of the bond for alleged impossibility of performance of the surety contract nor for the interests of justice.

### 3. The magistrate court did not abuse its discretion in finding that justice did not require the exoneration of Two Jinn's bond.

Two Jinn argues that the magistrate court abused its discretion in not granting Two Jinn relief under former Idaho Criminal Rule 46(e)(4), which stated, *inter alia*, that "[t]he court which has forfeited bail before remittance of the forfeiture may direct that the forfeiture be set aside upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture."

The determination of whether to set aside the forfeiture of a bail bond under former I.C.R. 46(e)(4) is committed to the discretion of the trial court and will not be overturned absent a finding that the trial court abused its discretion. *State v. Rupp*, 123 Idaho 1, 3, 843 P.2d 151, 153 (1992). In determining whether a court has abused its discretion, this Court considers:

3

(1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason.

*Taylor v. McNichols*, 149 Idaho 826, 832, 243 P.3d 642, 648 (2010) (quoting *Spur Prod. Corp. v. Stoel Rives LLP*, 142 Idaho 41, 43, 122 P.3d 300, 302 (2005)). Under former I.C.R. 46(e):

[i]n deciding how much, if any, of the bond to forfeit, the court should also consider: (1) the willfulness of the defendant's violation of bail conditions; (2) the surety's participation in locating and apprehending the defendant; (3) the costs, inconvenience, and prejudice suffered by the state as a result of the violation; (4) any intangible costs; (5) the public's interest in ensuring a defendant's appearance; and (6) any mitigating factors.

The magistrate court recognized that its decision whether or not to exonerate bail was one of discretion, and recognized the relevant factors applicable to that determination and came to a reasonable decision. Additionally, deportation is not a new idea in criminal law cases. The risk of deportation is a risk best decided by the bonding company at the time of writing the bond. It is a risk only the surety can analyze, no one else. Justice doesn't demand the surety receive its fees without assessing its risks before entering into the surety contract.

**4. The magistrate court properly found that the contract law defense of impossibility of performance was inapplicable here**.

Two Jinn argues that it should be relieved from the bond forfeiture under the contract law doctrine of impossibility because Navarro was deported to Mexico and it was impossible for Two Jinn to return Navarro to Idaho within 180 days of his failure to appear.

"A bail bond agreement is a suretyship contract between the state on one side and an accused and his or her surety on the other side, whereby the surety guarantees the appearance of an accused." *State v. Castro*, 145 Idaho 993, 995, 188 P.3d 935, 937 (Ct. App. 2008). The scope of the surety's guarantee is determined by the bond agreement, subject to the rules of contract law and suretyship. *Id*. Two Jinn's bond agreement states that Two Jinn[1]:

undertakes that the above-named defendant will appear in the above-named court on the date above set forth to answer any charges in any accusatory pleading based upon the acts supporting the complaint filed against him/her and as duly authorized amendments thereof, in whatever court it may be filed and prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of

---

[1] The bail bond agreement actually says that Lincoln General Insurance Company would perform these obligations, but Two Jinn is acting as the bail agent.

probation; or if he/she fails to perform either of these conditions, that [Two Jinn] will pay the people of the State of Idaho the sum of [$500].

Law in existence at the time a contract is made is written into and made a part of every written contract. *Robinson v. Joint Sch. Dist. No. 150*, 100 Idaho 263, 265, 596 P.2d 436, 438 (1979).

"The doctrine of impossibility operates to excuse performance when the bargained-for performance is no longer in existence or is no longer capable of being performed due to the unforeseen, supervening act of a third party." *Haessly v. Safeco Title Ins. Co. of Idaho*, 121 Idaho 463, 465, 825 P.2d 1119, 1121 (1992). "In order to prove impossibility: (1) a contingency must occur; (2) performance must be impossible, not just more difficult or more expensive; and (3) the nonoccurrence of the contingency must be a basic assumption of the agreement." *Kessler v. Tortoise Dev., Inc.*, 130 Idaho 105, 108, 937 P.2d 417, 420 (1997). "[I]t is the task itself which must be impossible—it is not enough that the particular promisor is unable to perform the task if it would be possible for a different promisor to perform." *State v. Chacon*, 146 Idaho 520, 523, 198 P.3d 749, 752 (Ct. App. 2008). "[W]here the condition is possible at the date of the instrument and becomes impossible subsequently, the obligation does not become thereby discharged, unless the impossibility of performance was the act of God, or of the law, or of the obligee." *Clark v. Barnard*, 108 U.S. 436, 454 (1883). Where a defense of impossibility would not be available to a principal it is not available to his surety. *Taylor v. Taintor*, 83 U.S. 366, 374 (1872).

In *Taylor v. Taintor*, the United States Supreme Court considered a claim for relief by a bail agent under the impossibility doctrine where Edward McGuire was arrested in Connecticut, bailed out and subsequently travelled to New York where he was arrested and transported to Maine to face criminal charges there. 83 U.S. at 368. McGuire had been charged with a criminal offense in Maine prior to his arrest and release in Connecticut, though his bail agent did not know this. *Id*. at 369. The Court noted that it is "the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law." *Id*. Further, "[i]f the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is [rendered impossible by the act of the law]." *Id*. at 369–70. The Court did not find that New York's action in arresting McGuire and turning him over to Maine was an "act of the law" preventing performance of the contract, rather the act preventing performance was McGuire's own act in violating the law of Maine. *Id*. at 373–74.

5

The Court concluded that the impossibility doctrine was not an available defense to McGuire's bail agent, as Maguire "cannot be allowed to avail himself of an impossibility of performance thus created; and what will not avail him cannot avail his sureties." *Id*. at 374. The Court noted that if Connecticut had voluntarily, without legal compulsion, transported Maguire to another State to face criminal charges that act of voluntary transfer by the State would have constituted an "act of law" implicating impossibility of performance. *Id*. at 373.

It is undisputed that Navarro was unlawfully present in the United States as an illegal immigrant. He knew this at the time that he entered into the bond agreement and thus was aware of the risk that he might be detained and deported by federal authorities at any time. Thus, the contingency which occurred—although the supervening act of a third party—was not an *unforeseen* supervening act. As in *Taylor*, the reason for the impossibility was the conduct of the criminal defendant, thus the impossibility doctrine is unavailable as a defense to Two Jinn.

In support of its argument, Two Jinn cites to the California Court of Appeals case of *People v. American Surety Insurance Co.*, 77 Cal.App.4th 1063 (Cal. Ct. App. 2000). However, that case analyzed a California statute and has no application.

We find that even if Two Jinn had conclusively established that Navarro was deported, the impossibility doctrine would not have been a meritorious defense as Navarro's deportation was due to his status as an illegal immigrant unlawfully present in the United States, a fact that he knew at the time the bond agreement was entered into. Thus the act by the federal government in deporting Navarro was not an unforeseen supervening act that would excuse performance. As previously stated the risk of finding out the immigration status of a potential client for purposes of posting bond is left to the bonding company's discretion.

## IV. CONCLUSION

The magistrate court did not abuse its discretion in denying Two Jinn's requested bond exoneration. Therefore, we affirm the district court decision upholding the magistrate court decision. Costs to the State.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**