# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41489

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 74** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: September 18, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| BIG DAWG BAIL BONDS, | ) | |
| | ) | |
| Real Party in Interest-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUZANA MARIE CONNOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Richard D. Greenwood, District Judge.

Order partially exonerating bail bond, <u>affirmed</u>.

Eagle Law Center, LLC, Eagle, for appellant.  Aaron J. Tribble argued.

Hon. Lawrence G. Wasden, Attorney General; Carl J. Withroe, Deputy Attorney General, Boise, for respondent.  Carl J. Withroe argued.

---

LANSING, Judge

Big Dawg Bail Bonds posted a surety bond for Suzana Marie Connor.  She failed to appear at a scheduled hearing, and the district court ordered forfeiture of her bond.  Big Dawg filed a motion seeking exoneration of the bond on the ground that state entities frustrated its ability to arrest Connor, who is believed to have fled to India.  The district court granted partial exoneration and Big Dawg appeals, arguing that it is entitled to full exoneration of the bond.

1

## BACKGROUND

Connor was charged with a felony count of operating a vehicle while under the influence of alcohol in violation of Idaho Code §§ 18-8004, 18-8005(9). Big Dawg posted a $50,000 surety bond on Connor's behalf and she was released from custody. After her release, Connor appeared at her arraignment and at another hearing where she entered a not guilty plea. She failed to appear, however, at a hearing on January 15, 2013. At that time, the court ordered that the bond be forfeited and indicated its intent to issue a bench warrant for Connor's arrest. On January 23, the clerk of the district court mailed a notice of the forfeiture to Big Dawg, but the notice was not received by Big Dawg until January 28. The bench warrant for Connor's arrest was not issued by the district court until January 24, and it did not appear on the district court's register of actions until January 31.

Big Dawg filed a motion to set aside the forfeiture and exonerate the bond. It argued that the district court's delays and a sheriff's policy combined to prevent it from arresting Connor before she fled. Kevin Elliot, the owner of Big Dawg, testified as follows at a series of evidentiary hearings. He first became concerned that Connor might abscond on January 12, before she missed a hearing. On that day, Connor's mother-in-law told him that Connor was acting strangely and might abscond. Elliot was suspicious that the mother-in-law was giving a false report to influence certain child custody proceedings and was concerned that he would violate a Department of Insurance guideline if he arrested Connor without actual proof that she would abscond.

On or before January 28, the day Big Dawg received written notice of the failure to appear, Elliot learned that Connor had missed a court date. On January 28, he drove by her home and did not see her, but did see her car parked at her mother's home. He did not make any attempt to arrest her at that time. According to both the State and Elliot, the Ada County Sheriff had a policy of refusing to accept a prisoner who had been arrested by a bail bondsman, even where the bond had been forfeited, if no active warrant appeared on the Idaho Supreme Court Data Repository.[1] A sheriff's employee had previously informed Elliot that he would be arrested

---

[1] The repository is a publicly accessible database containing the register of actions for cases heard in Idaho state courts. While the website states that it updates hourly, this statement is qualified by the fact that the repository only contains "changes made to the court record during

for kidnapping if he brought an arrested person to the jail under those circumstances.[2] Accordingly, Elliot waited until the warrant appeared on the repository on January 31. On that day, he began searching for Connor again, but did not find her. Big Dawg expended approximately $8,000 looking for Connor, including trips across Idaho and to California. Elliot testified that based on his investigation, he believed that Connor had fled to India and was living there. It appears that Connor may have left as early as January 17 or 18.

After a series of hearings, the district court exonerated $29,000 of the $50,000 bond. The court cited several factors that tended to show exoneration was warranted, including the resources Big Dawg had expended in its attempt to arrest Connor, the delay in issuing the warrant, and the sheriff's policy of refusing to accept a prisoner until it had received a warrant. The court also concluded, however, that full exoneration was not warranted for four reasons. First, Connor would be monetarily liable to Big Dawg for the portion of the bond that was not exonerated, and full exoneration would reduce her liability for her failure to appear. Second, full exoneration would encourage both Big Dawg and other bonding agencies to be less careful when issuing bonds. Third, Big Dawg could have been more diligent. It could have arrested Connor before she failed to appear,[3] and it could have contacted court personnel to obtain information or a warrant more expeditiously. Finally, it was not clearly established that the court's delay in issuing the warrant or the jail's policy were the sole cause of Big Dawg's inability to capture Connor before her escape to India. On this basis, the court concluded that the state entities

---

the working day by trial court personnel." Because most court documents are not digitized and the working, original version of a register of actions is a hard copy, the repository is not always immediately updated.

[2]      Neither party has asked us to address the legality of the sheriff's policy and doing so is not required to resolve this appeal.

[3]      Idaho Code § 19-2913 states:
> (1) *At any time before forfeiture of bail*, a surety insurance company or its bail agent or person posting a property bond or cash deposit may surrender the defendant to the sheriff of the county where the action is pending. Upon the surrender of the defendant, the sheriff shall accept and incarcerate the defendant in lieu of the bail originally set by the court.

(emphasis added).

(including the court), and Big Dawg were roughly equally responsible for the failure to arrest Connor before she absconded. It then added the costs that Big Dawg had paid, approximately $8,000, to the bond amount for a total of $58,000. Because it concluded that the parties were equally responsible, it exonerated half of that amount, or $29,000, of the bond.

## II.

## ANALYSIS

Big Dawg argues that it is entitled to full exoneration of the bond because the court breached the bond contract by delaying issuance of a bench warrant upon Connor's failure to appear. Big Dawg urges application of a contract law remedy--rescission of the bond and restitution of the bond amount. In the alternative, it argues that it is entitled to full exoneration under Idaho Criminal Rule 46 because, among other reasons, state entities increased Big Dawg's risk on the bond.

"A bail bond agreement is a suretyship contract between the state on one side and an accused and his or her surety on the other side, whereby the surety guarantees the appearance of an accused." *State v. Two Jinn, Inc.*, 151 Idaho 725, 728, 264 P.3d 66, 69 (2011) (hereinafter *Two Jinn II*) (quoting *State v. Castro*, 145 Idaho 993, 995, 188 P.3d 935, 937 (Ct. App. 2008)). However, this Court has rejected the view, held by some courts, that *any* type of action by the court that materially changes a condition of the bond contract without the surety's knowledge and consent, and thereby materially increases the risk to the surety, terminates the surety's obligation on the bond. *State v. Two Jinn*, *Inc.*, 148 Idaho 752, 756-58, 228 P.3d 1019, 1023-25 (Ct. App. 2010) (hereinafter *Two Jinn I*). We held in *Two Jinn I* that "a purely contractual analysis" is not appropriate because there is a statutory scheme governing bonds and there are court rules specifically governing exoneration. *Id.* at 758, 228 P.3d at 1025; *see also State v. Abracadabra Bail Bonds*, 131 Idaho 113, 116, 952 P.2d 1249, 1252 (Ct. App. 1998) (holding "existing law becomes part of the contract, as though the contract contains an express provision to that effect"). Thus, while certain principles of contract law may apply, even a material breach by the State does not automatically require exoneration. Rather, our review of a district court's decision to exonerate a bond is primarily guided by Idaho Criminal Rule 46. *Two Jinn I*, 148 Idaho at 754, 228 P.3d at 1021; *Abracadabra Bail Bonds*, 131 Idaho at 116, 952 P.2d at 1252; *see also* I.C. § 19-2917.

4

Whether to set aside the forfeiture of a bail bond under I.C.R. 46 is committed to the discretion of the trial court and will not be overturned absent a finding that the trial court abused its discretion. *Two Jinn II*, 151 Idaho at 727, 264 P.3d at 68; *State v. Rupp*, 123 Idaho 1, 3, 843 P.2d 151, 153 (1992); *see also Two Jinn I*, 148 Idaho at 755, 228 P.3d at 1022. "In determining whether a court has abused its discretion, this Court considers: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason." *Two Jinn II*, 151 Idaho at 727-28, 264 P.3d at 68-69 (quoting *Taylor v. McNichols*, 149 Idaho 826, 832, 243 P.3d 642, 648 (2010)).

At the time of the hearing on Big Dawg's motion, I.C.R. 46 authorized the district court to exonerate the bond "if it appears that justice does not require the enforcement of the forfeiture." I.C.R. 46(h)(1). The rule also sets forth a nonexhaustive list of factors to determine whether exoneration is appropriate:

> (A) the willfulness of the defendant's violation of the obligation to appear;
> (B) the participation of the person posting bail in locating and apprehending the defendant;
> (C) the costs, inconvenience, and prejudice suffered by the state as a result of the defendant's violation of the obligation to appear;
> (D) any intangible costs;
> (E) the public's interest in insuring a defendant's appearance;
> (F) any mitigating factors;
> (G) whether the state exhibited any actual interest in regaining custody of the defendant through prompt efforts to extradite him;
> (H) whether the bonding company has attempted to assist or persuade the defendant to expedite his return to Idaho by exercising his rights under the Interstate Agreement on Detainers, Idaho Code § 19-5001 et seq.; and
> (I) the need to deter the defendant and others from future violations.

I.C.R. 46(h)(1). Because of the contractual nature of a bond, a trial court may also consider whether the State breached the contract by materially increasing the risk to a surety as an additional factor in determining whether to exonerate a bond. *Two Jinn I*, 148 Idaho at 758, 228 P.3d at 1025. The trial court is authorized to order partial exoneration when either forfeiture or exoneration of the entire amount would be inequitable. *Id*. at 759, 228 P.3d at 1026.

In the district court, counsel for Big Dawg stated, "I believe partial exoneration is more than fair in this case." Nonetheless, on appeal Big Dawg argues that partial exoneration

amounted to an abuse of discretion. First, it argues that the district court violated a statute and increased Big Dawg's risk on the bond by failing to immediately issue a bench warrant after Connor failed to appear. Second, it contends that the delay caused by joint effect of the court's delay and the sheriff's policy prevented Big Dawg from apprehending Connor. Lastly, it argues that the district court also gave too little consideration to Big Dawg's efforts to find Connor and that partial exoneration is an abuse of discretion because it is bad public policy.[4]

We agree that the trial court should have immediately issued the bench warrant as required by law. Idaho Code § 19-2915(1) directs trial courts to issue a bench warrant *immediately* after determining that a defendant has failed to appear:

> If without sufficient excuse the defendant fails to appear before the court as ordered, the court shall *immediately*:
>> (a) Enter the defendant's failure to appear in the minutes;
>> (b) Order forfeiture of the bail; and
>> (c) Issue a bench warrant for the arrest of the defendant.

(emphasis added). In *Two Jinn I*, 148 Idaho at 759, 228 P.3d at 1026, this Court held that the statute does not authorize a trial court to stay the execution of the bench warrant. It likewise does not authorize the trial court to delay issuance of a warrant for several days following a defendant's failure to appear. Accordingly, the district court should have issued the bench warrant immediately upon ordering forfeiture of the bond. This error of the district court is a factor to be weighed in determining the appropriate extent to which the bond should be exonerated.

Our cases governing exoneration distinguish "the incremental risk associated with" state action from "the original risk associated with posting bond." *Id.* at 758, 228 P.3d at 1025. There is always some risk attendant to posting bond. Bail bonding companies' business is to weigh and assume that risk in exchange for payment. Although Big Dawg has persuasively argued that the actions of the district court and jail personnel may have impaired its ability to apprehend Connor, Big Dawg did not persuade the district court and has not persuaded this Court, that these actions by state entities are the sole reason Big Dawg was unable to apprehend Connor. Here, the

---

[4]    In addition, Big Dawg argues that the court should have considered Connor's offense, felony driving while under the influence of alcohol, to be a more serious crime. It is not clear why this factor would weigh in Big Dawg's favor, and the record does not indicate that the district court considers drunk-driving a trifling offense.

mother-in-law's report put Big Dawg on notice that its risk on Connor's bond was elevated. Nevertheless, as Big Dawg points out, its employees do not "hover around the court docket to ensure a defendant's appearance in court." Instead, Big Dawg relies upon its clients to inform it of the date of hearings and upon various state sources to discover when its clients miss hearings. Big Dawg's business judgment to operate in this manner may be appropriate as the most efficient use of its resources, but that passive practice unquestionably expands the opportunity for a client to flee before the company realizes he or she has missed a hearing. This risk is entirely independent of the court's delay and the jail's policy.

The evidence here does not rule out the possibility that Connor left the country as early as January 17 or 18, before Big Dawg discovered that she had failed to appear at the January 15 hearing.[5] Therefore, even if the court had immediately issued a bench warrant and the sheriff had immediately received it, Big Dawg still may not have apprehended Connor because it may not have begun seeking her until after she had fled. That risk is solely attributable to the nature of Big Dawg's business practices. Moreover, there is no indication that Big Dawg took any steps to address the delays about which it complains. If Big Dawg had been aware of the failure to appear on January 15, it could have asked the court to issue a warrant, obtained a certified copy of the warrant, and brought it to jail staff upon arresting Connor.

We also conclude that the trial court did not abuse its discretion when considering the resources Big Dawg expended in attempting to locate Connor. The district court credited half of Big Dawg's costs when partially exonerating the bond. While the district court could have ordered a larger share of the bond exonerated, Big Dawg has not shown that the amount chosen by the district court was an abuse of discretion. *See id.* at 759, 228 P.3d at 1026 (discussing partial exoneration).

Finally, we are not persuaded that affirming the district court's order granting partial exoneration will result in the "parade of horribles" that Big Dawg describes. It argues that an affirmance will cause "lapses in oversight by the courts in complying with Idaho Code § 19-2915(1)." We, however, have full confidence in judges' fidelity to the rule of law and trust that

---

[5] Elliot's testimony did not state the precise date on which he learned that Connor had failed to appear. He stated only that "it didn't come to [his] attention until later in January." His counsel, in an earlier hearing, represented that Big Dawg first attempted to find Connor on January 19.

our discussion above will dispel any misconceptions about application of the statute. Big Dawg also argues that "bondsmen may resort to impermissible self-help." We do not share this expectation, but to the extent that disallowing full exoneration of a bond in the circumstances presented here could somehow induce illegal behavior by bondsman, civil and criminal penalties exist to deter or punish that conduct. Finally, we are not persuaded that partial exoneration of the bond would induce criminal defendants to fail to appear for court proceedings. An array of penalties exists to deter a person's choice not to appear. Bail jumping is punishable as a criminal offense, I.C. § 18-7401, and the person who fails to appear may be liable to the bonding company for monetary damages. Full exoneration of the bond would actually *reduce* the defendant's financial liability for failing to appear.

Because Big Dawg has not demonstrated an abuse of discretion in the district court's decision to order partial exoneration of Big Dawg's bond, the order of the district court is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**