# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 52341

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: February 24, 2026 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| ALLEGHENY CASUALTY COMPANY and A-AFFORDABLE BAIL BONDS IDAHO, LLC, | ) ) ) |
| | ) |
| Real Party in Interest-Appellants. | ) |
| | ) |
| and | ) |
| | ) |
| DAOBANG HUANG, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick J. Miller, District Judge.

Order denying motion to set aside forfeiture and exonerate bond, <u>affirmed</u>.

Magyar Rauch & Associates PLLC; Gregory R. Rauch, Moscow, for appellants. Gregory R. Rauch argued.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent, State of Idaho. Jaden Steeves argued.

_____

TRIBE, Chief Judge

Allegheny Casualty Company and A-Affordable Bail Bonds Idaho, LLC (Allegheny) appeal from the district court's order denying their motion to set aside forfeiture and exonerate bond. We affirm.

1

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2022, the State filed a criminal complaint alleging Daobang Huang committed one felony count of forcible digital penetration and one misdemeanor count of practicing massage therapy without a license. That same day, the magistrate court found probable cause and issued a nationwide arrest warrant setting bond at $25,000. Over three months later, the arrest warrant was faxed to Cameron County, Texas. The warrant was ultimately served upon Huang, who was returned to Ada County on June 30, 2023.

On June 30, 2023, Huang made his first appearance in Ada County with a Mandarin interpreter. The magistrate court set bond at $100,000 and scheduled a preliminary hearing for July 14. On July 7, Huang entered into a bail agreement with Allegheny, who then posted Huang's $100,000 bond.

On July 14, 2023, the date set for the preliminary hearing, the State filed an amended complaint alleging four counts: the same felony count of forcible digital penetration but alleging a different date and additional means by which the count could have occurred; the same misdemeanor count of practicing massage therapy without a license; and two new misdemeanor counts of sexual battery. At the preliminary hearing, Huang was out of custody and present with a Mandarin interpreter. Because of the new charges, the magistrate court rescheduled the preliminary hearing for September 8.

On August 15, 2023, a grand jury indicted Huang on one count of misdemeanor sexual battery and the same count of practicing massage therapy without a license. Although the grand jury did not indict Huang on the allegation of forcible digital penetration, it did indict him on a similar allegation--forcible penetration with a towel.

Following the indictment, an arraignment was set for August 28, 2023. No written notice of the August 28 hearing was sent to Huang, and he did not appear for the hearing. Huang's counsel explained that Huang was out of state and had scheduled his travel based on the previously set September 8 preliminary hearing date. Huang's counsel also admitted that he had not given Huang sufficient notice of the August 28 hearing date to allow him to change his flight. The prosecutor confirmed that the State did not send formal notice and that she assumed Huang's counsel would communicate the new date to Huang. The district court, having found no physical

2

evidence of proper notice sent to Huang or his counsel, concluded that Huang's failure to appear on August 28 was excusable and reset the arraignment for September 11. The district court also stated that it would issue a written notice to Huang to ensure his appearance at the scheduled hearing.

On September 5, 2023, the State moved for permission to resubmit the case to a grand jury for an additional charge of digital forcible penetration. The district court granted the State's request. That same day, Huang's counsel moved to allow Huang to appear remotely. The district court did not rule on the motion; therefore, Huang was still required to personally appear on September 11.

On September 11, 2023, Huang appeared in person as required. A senior judge presided at the hearing, arraigned Huang, and set a status/scheduling conference for October 2. Huang's counsel requested that Huang be allowed to appear remotely due to the cost of airfare. The State objected, noting Huang was not a United States citizen, had no ties to Idaho, and faced a similar pending charge in Texas. After initially denying the request, the senior judge reconsidered and allowed Huang to appear remotely for the October 2 hearing only.

The following day, on September 12, 2023, a grand jury returned the superseding indictment adding the count of digital forcible penetration. On September 13, the State filed an Idaho Criminal Rule 46(*l*)(1) motion to increase bond, citing Huang's lack of citizenship, absence of Idaho ties, ties to Chicago, and noting that the similar charge in Texas had led to an indictment. Neither the State nor the district court provided notice of this motion to Allegheny.

On October 2, 2023, Huang appeared remotely as permitted by the senior judge at the arraignment. The district court arraigned Huang on the new charge and heard the State's request to increase bond. The district court continued the State's motion. Huang's counsel requested a delay of four to six weeks so Huang could obtain funds for travel, and Huang stated he had sent in his passport and could not travel. The district court allowed the delay but expressly ordered Huang to personally appear on October 30.

On October 30, 2023, Huang's counsel appeared but Huang did not. The State indicated that, according to the information it gathered from the United States Immigration and Customs Enforcement (ICE), Huang left the United States on October 6 for the People's Republic of China

3

while in possession of a valid passport. Finding that Huang failed to appear despite clear notice requiring an in-person appearance, the district court stated it would issue a no-bond warrant.

Two days later, on November 1, 2023, the clerk notified Allegheny that the bail had been declared forfeited on October 30 pursuant to Idaho Code § 19-2915. Allegheny does not dispute that it received the November 1 notice or that the notice was mailed within five days of the forfeiture. On November 2, the clerk prepared a bench warrant for Huang's arrest; on November 11, the district court signed and issued it. On April 25, 2024, Allegheny filed a motion to set aside forfeiture and exonerate bond, supported by the affidavit of bail bondswoman, Dana L. Thornburg. Following a hearing, the district court denied the motion. Allegheny appeals.

## II.

## STANDARD OF REVIEW

The decision whether to set aside a forfeiture or exonerate bond is committed to the trial court's discretion. *State v. Quick Release Bail Bonds*, 144 Idaho 651, 655, 167 P.3d 788, 792 (Ct. App. 2007). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

On appeal, Allegheny contends that the district court abused its discretion by: (1) not issuing a bench warrant and notice of forfeiture the first time Huang failed to appear at a hearing in August 2023; (2) concluding that the court's own actions in continuing hearings and allowing Huang to appear remotely did not materially increase the risk of forfeiture; (3) applying the I.C.R. 46(h)(1) factors to the motion to set aside forfeiture and exonerate bond; and (4) failing to consider whether a partial forfeiture was appropriate.

Allegheny also asks this Court to clarify the standard of review that applies when a district court, in deciding whether to exonerate a bond, determines whether it abused its discretion in issuing a bench warrant. In general, a trial court has discretion over bond forfeiture matters, and

4

we review such decisions for abuse of discretion. *State v. Two Jinn, Inc.*, 148 Idaho 752, 754-55, 228 P.3d 1019, 1021-22 (Ct. App. 2010).

Allegheny argues that, in ruling on the motion to set aside forfeiture and exonerate bond, the district court was effectively reviewing its earlier decision not to issue a bench warrant under an abuse of discretion standard. Allegheny asserts that this procedural posture is novel and therefore warrants the adoption of a new standard of review governing a district court's denial of a motion to set aside a bond forfeiture.[1]

Allegheny's argument does not support adopting a new standard of review. When assessing whether the district court materially increased the surety's risk, the trial court must necessarily consider its own prior actions; that feature of the analysis does not render the inquiry novel, nor does it require a different standard of review. If a trial court abuses its discretion in managing a defendant's release or in deciding whether to issue a bench warrant, that circumstance may bear on whether the surety's risk increased. However, the possibility of such error does not justify altering the governing framework.

Allegheny also conflates two distinct rulings: (1) the district court's decision not to issue a bench warrant; and (2) the district court's subsequent decision denying the motion to set aside forfeiture and exonerate bond. Each is an independent determination subject to independent appellate review--precisely the manner in which Allegheny has presented them here. The district court's explanation of its reasoning does not alter this Court's standard of review on appeal.

---

[1]     In support of its argument, Allegheny relies on *State v. Abracadabra Bail Bonds*, 131 Idaho 113, 952 P.2d 1249 (Ct. App. 1998). Allegheny contends that *Abracadabra Bail Bonds* "involved a decision of a magistrate court and an appeal from a district court's decision affirming it." However, Allegheny mistakenly believes that this case involves an intermediate appeal from the district court. In *Abracadabra Bail Bonds*, the defendant was released on bond after the filing of a criminal complaint. *Id.* at 115, 952 P.2d at 1251. During the defendant's release, a superseding indictment was filed. *Id.* The defendant failed to appear for the preliminary hearing on the charges filed in the complaint. *Id.* The magistrate court mistakenly believed the defendant was in custody awaiting arraignment on the indictment and did not forfeit the bond. *Id.* The defendant subsequently failed to appear for arraignment on the indictment, prompting the district court to issue a bench warrant and order forfeiture of the bond. *Id.* Allegheny's characterization of the case as one stemming from a magistrate court's decision that was later affirmed by the district court is incorrect.

A.      Bench Warrant

Allegheny first argues that the district court abused its discretion by declining to issue a bench warrant when Huang failed to appear for his arraignment on August 28, 2023. Allegheny contends that I.C. § 19-2915(1) imposed a mandatory duty on the district court to immediately forfeit the bond and issue a bench warrant once Huang failed to appear without sufficient excuse. According to Allegheny, had the district court done so, the clerk would have been obligated under I.C. § 19-2922(2) to provide written notice of the forfeiture within five business days, and any failure to provide timely notice would have required automatic exoneration of the bond.

We first note that the district court is not mandated to forfeit a bond upon a defendant's failure to appear. Idaho Code Section 19-2915 states, in relevant part, that the trial court "shall immediately" order forfeiture, issue a warrant, and notify the surety of the same, "[i]f without sufficient excuse the defendant fails to appear before the court as ordered." Consistent with this section, I.C.R. 10(d)(3) states that, in the event a defendant fails to appear for a scheduled hearing, the trial court "may issue a bench warrant for defendant's arrest" along with forfeiting the bail. Therefore, a trial court's decision to forfeit a defendant's bail depends on whether there was a sufficient excuse for defendant's failure to appear. *State v. Abracadabra Bail Bonds*, 131 Idaho 113, 116, 952 P.2d 1249, 1252 (Ct. App. 1998). Whether a sufficient excuse has been presented is within the sound discretion of the trial court. *Id.* Consequently, the dispositive issue here is whether the district court abused its discretion by concluding that Huang's counsel's delayed notice constituted a sufficient excuse for Huang's failure to appear.

Allegheny asserts that the district court's finding of sufficient excuse for Huang's absence stemmed from a mistaken belief that the court itself bore responsibility for providing notice of the arraignment. Allegheny contends that I.C.R. 10(d)(2) places the notice obligation squarely on the prosecuting attorney and that Huang's counsel admitted he received the necessary notice but failed to inform Huang in time to adjust previously scheduled travel. In Allegheny's view, had the district court properly understood these notice obligations, it would have found no sufficient excuse for the missed appearance, would have been required to order forfeiture and issue a bench warrant on August 28 and the State's later November 1 forfeiture notice would therefore be untimely.

The record reflects that, at the August 28 hearing, Huang's counsel acknowledged that he failed to provide Huang with sufficient notice to change his travel plans from the previously

6

scheduled September 8 hearing to the newly set August 28 arraignment. After Huang's counsel raised the notice issue, the district court sought clarification from the State to confirm that proper notice had been provided for the September 8 preliminary hearing and then inquired whether any formal notice had been sent to Huang regarding the August 28 arraignment. Following several explanations, the State ultimately conceded that it could not identify any formal notice sent to Huang. Although the district court expressed concern about Huang's immigration status and other risk factors, it recognized that the absence of notice raised due process concerns that precluded issuance of a bench warrant. In doing so, the district court properly understood that the responsibility for providing notice rested with the State. The district court acted within its discretion in declining to issue a warrant based on Huang's failure to appear.

Finally, Allegheny argues that Huang was considered to have notice of all facts in the case "of which can be charged upon [his] attorney." The State argues that the imputed knowledge doctrine is not absolute, and Huang could not be bound by his counsel's knowledge that was not communicated to Huang. In response, Allegheny contends that the State did not preserve the imputed knowledge doctrine argument.

We first note that the State is entitled to make a reasonable argument in response to matters brought by Allegheny in its opening brief. Here, Allegheny argues in its opening brief that Huang was bound by actions or inactions of his counsel, even if those actions resulted from counsel's error--an argument that effectively invoked the imputed knowledge doctrine. By advancing that position, Allegheny invited a response from the State. Accordingly, the State's argument concerning the imputed knowledge doctrine is preserved.

As to the knowledge imputed upon Huang by his counsel, we conclude that, although an attorney's knowledge is imputed on his or her client, the knowledge relies on the attorney's duty to communicate such information to the client. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (holding that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused); *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010) (holding that "counsel must inform her client whether his plea carries a risk of deportation"). Whether an attorney's communication with a client regarding an upcoming hearing is generally presumed is an issue for another case. Here, Huang's counsel admitted that he failed to communicate the correct hearing date to Huang.

Consequently, the district court had no basis to conclude that Huang was sufficiently aware of the hearing date in advance to secure his in-person appearance. Accordingly, the imputed knowledge doctrine does not apply in this case.

**B.      Material Increase to the Risk of Forfeiture**

Allegheny argues that the district court erred when it determined that the district court's actions did not materially increase the risk of forfeiture. Allegheny seems to contend that the senior judge erred by not requiring Huang to appear in person at the scheduled status conference, even after the State cautioned the district court about Huang's flight risk.

"A bail bond agreement is a suretyship contract between the state on one side and an accused and his or her surety on the other side, whereby the surety guarantees the appearance of an accused." *State v. Two Jinn, Inc.*, 151 Idaho 725, 728, 264 P.3d 66, 69 (2011). However, this Court has rejected the view, held by some trial courts, that *any* type of action by the trial court that materially changes a condition of the bond contract without the surety's knowledge and consent, and thereby materially increases the risk to the surety, terminates the surety's obligation on the bond. *Two Jinn, Inc.*, 148 Idaho at 756-58, 228 P.3d at 1023-25. A "purely contractual analysis" is not appropriate because there is a statutory scheme governing bonds and there are court rules specifically governing exoneration. *See id.* at 758, 228 P.3d at 1025; *see also Abracadabra Bail Bonds*, 131 Idaho at 116, 952 P.2d at 1252 (holding that "existing law becomes part of the contract, as though the contract contains an express provision to that effect"). Thus, while certain principles of contract law may apply, even a material breach by the State does not automatically require exoneration. Rather, our review of a trial court's decision to exonerate a bond is primarily guided by I.C.R. 46. *Two Jinn, Inc.*, 148 Idaho at 754, 228 P.3d at 1021; *Abracadabra Bail Bonds*, 131 Idaho at 116, 952 P.2d at 1252.

Whether to set aside the forfeiture of a bond under I.C.R. 46 is committed to the discretion of the trial court and will not be overturned absent a finding that the trial court abused its discretion. *State v. Big Dawg Bail Bonds*, 157 Idaho 373, 376, 336 P.3d 306, 309 (Ct. App. 2014). Idaho Criminal Rule 46 authorizes the trial court to exonerate the bond "if it appears that justice does not require the enforcement of the forfeiture" and sets out a list of factors to determine the propriety of exoneration. Because of the contractual nature of a bond, in determining whether to exonerate a bond, a trial court may also consider whether the State breached the contract by materially

8

increasing the risk to a surety as well as whether the forfeiture of a bond was actually caused by the alleged breach. *Two Jinn, Inc.*, 148 Idaho at 758, 228 P.3d at 1025. The trial court is authorized to order partial exoneration when either forfeiture or exoneration of the entire amount would be inequitable. *Id.* at 759, 228 P.3d at 1026. If the State, without notice to or without the consent of the bondsman, alters the terms of the bond agreement in a manner that materially increases the bondsman's risk, the alteration operates as a discharge of the bondsman's obligation. *Id.* at 757, 228 P.3d at 1024. An alteration is material when it changes the nature of the contract by placing the bondsman in a substantially different position than he or she occupied before the change was made. *Id.*

There is always some risk attendant to posting bond. A bail bond company must weigh and assume that risk in exchange for payment. *Big Dawg Bail Bonds*, 157 Idaho at 377, 336 P.3d at 310. To alleviate that risk, a surety should exercise care in ascertaining a defendant's circumstances and community ties before executing an appearance bond, much as a trial court must do before determining a defendant's release conditions under I.C.R. 46(c). Allegheny should have known that Huang's deportation or his flight was (at least) a possibility, having posted the bond in a felony case to a foreign citizen of a country that does not have an extradition agreement with the United States. Despite this well-defined immigration status risk, and despite Allegheny's knowledge that Huang faced a similar charge in another state, Allegheny nonetheless elected to post bond on Huang's behalf.

In its reply brief, Allegheny contends that the outcome of this case turns on whether Huang was deported or voluntarily left the country. We disagree. This distinction is not determinative here. Whether a defendant departs because the defendant flees or because federal authorities remove the defendant, the result is the same--the defendant is unavailable to answer the charges and the bond's purpose is frustrated. Although deportation is neither a risk inherent in every bail bond, nor is it the primary risk such agreements are designed to address, it is nevertheless an implied risk that arises whenever a surety enters into a bail agreement with a non-citizen. By entering into such agreements, the surety necessarily assumes the possibility that the defendant may later engage in conduct that triggers removal proceedings or attempt to flee the consequences of the criminal charges.

9

The record is devoid of any indication that any of the district court's actions caused Huang to be deported or to flee. Although a material increase in risk may justify releasing Allegheny from financial responsibility, it does not do so automatically. Our cases governing exoneration distinguish "the incremental risk associated with" state action from "the original risk associated with posting bond." *Two Jinn, Inc.*, 148 Idaho at 758, 228 P.3d at 1025. Therefore, we must determine whether the additional risk occurred. *Id.* First, the district court did not issue a warrant after Huang's first failure to appear. The district court then allowed Huang to appear remotely. Had Huang fled or been deported during either of those timelines, the surety could have possibly asserted the district court created some additional risk of flight. However, Huang in fact appeared at his scheduled hearings after each of the district court's decisions--first in person and later remotely--pursuant to the corresponding court orders. Only then did Huang return to China, whether it was voluntary or not. The incremental risk associated with state action never occurred. Therefore, the risk of Huang's flight or deportation is exactly the one Allegheny voluntarily took.

**C.    Statutory Factors**

Allegheny also argues that the district court erred by failing to apply all relevant statutory factors in determining whether to deny exoneration. Specifically, Allegheny contends that the district court failed to consider mitigating factors. In addition, Allegheny contends that the factors the district court evaluated were influenced by its erroneous assumption that Huang intentionally left the United States, rather than being removed through deportation.

Idaho Criminal Rule 46(h)(1) sets forth a non-exhaustive list of factors to determine whether exoneration is appropriate:

(A)    the willfulness of the defendant's violation of the obligation to appear;
(B)    the participation of the person posting bail in locating and apprehending the defendant;
(C)    the costs, inconvenience, and prejudice suffered by the state as a result of the defendant's violation of the obligation to appear;
(D)    any intangible costs;
(E)    the public's interest in ensuring a defendant's appearance;
(F)    any mitigating factors;
(G)    whether the state exhibited any actual interest in regaining custody of the defendant through prompt efforts to extradite;
(H)    whether the bonding company has attempted to assist or persuade the defendant to expedite his return to Idaho by exercising his rights under the Interstate Agreement on Detainers, Idaho Code § 19-5001 et seq.; and

(I)     the need to deter the defendant and others from future violations.

First, we address the manner in which Huang left the country.  Whether Huang was deported or voluntarily departed is not dispositive of whether the district court's actions materially increased the risk of forfeiture under the circumstances of this case.  Nevertheless, I.C.R. 46(h)(1)(A) requires the district court to consider the willfulness of a defendant's violation of the obligation to appear.  Allegheny argues that the district court mistakenly believed Huang fled the United States.

The record, however, supports the district court's understanding that Huang voluntarily left the United States and was not deported.  At the October 30 hearing, the State reported that ICE had "confirmed . . . that [Huang] had left the United States on October 6th and was going back to the People's Republic of China" and further noted that Huang possessed a valid passport at the time of his departure.  Although Allegheny's bondswoman, Thornburg, later submitted an affidavit asserting that she "concur[s] with Madam Prosecutor" that Huang had been "fast-tracked deported," the transcript reflects that the prosecutor did not state that Huang was deported.  Rather, the record consistently indicates that ICE confirmed Huang's departure using his passport.  Accordingly, the district court relied on the record before it to assess the relevant statutory factors and did not abuse its discretion in concluding that Huang willfully left the United States.

Next, we consider Allegheny's claim that the district court failed to address certain mitigating factors.  Allegheny asserts that its verification of Huang's lawful immigration status shows diligence in posting the bond and should have been treated as a mitigating circumstance.  In Allegheny's view, it assumed reduced risk because, unlike cases involving undocumented defendants, federal authorities could not have removed Huang at any time.  This argument is unpersuasive.  Huang's lawful immigration status did not meaningfully lessen the risk Allegheny assumed.  Huang was not a United States citizen, and his continued lawful presence was contingent on his compliance with the United States' laws.  Huang's pending felony charges, particularly multiple charges in two states, jeopardized that status.  Allegheny itself previously asserted that Huang was deported because of those charges, thereby undermining its own claim that lawful immigration status limited the risk of removal.  Allegheny cannot rely on both theories simultaneously.

11

The district court properly evaluated the record and determined that Huang departed the United States using a valid Chinese passport. The district court reasonably declined to treat Huang's immigration status as a mitigating factor because, under the circumstances of this case, it was not one. Securing bond for a non-citizen--with no meaningful ties to the jurisdiction and with similar charges pending in another state--from a country that has no extradition agreement with the United States inherently increases (rather than decreases) the risk of flight. The district court therefore acted within its discretion in concluding that Huang's immigration status did not mitigate the surety's risk.

Finally, Allegheny asserts that the district court erred in assessing the costs, inconvenience, and/or prejudice incurred by the State. Allegheny contends that the State failed to provide any supporting evidence to prove actual costs. In fact, Allegheny maintains that the State suffered no consequences associated with Huang's departure. Allegheny's contention that the State suffered no costs because it cannot show physical evidence of such costs is without merit. The State is not obligated to furnish a bill of costs, nor can the cost and inconvenience factor be dismissed simply because they were not substantial. *See Quick Release Bail Bonds*, 144 Idaho at 655, 167 P.3d at 792.[2] The trial court may, in its discretion, require a more formalized showing of this and any other factors but the trial court is not required to do so. *Id.* The district court was therefore under no obligation to demand further proof and acted well within its discretion by evaluating the factors based on the circumstances before it.

Here, the district court reasonably found prejudice arising from Huang's failure to appear. Huang's departure prevented the State from prosecuting the charged offenses and foreclosed any possibility of holding him accountable, thereby depriving the alleged victims of the protection and resolution the criminal process provides. Further, had Huang been convicted, the alleged victims lost any opportunity to obtain restitution and the State lost any opportunity to recoup the time and resources expended in investigating and prosecuting the case.

---

[2] The Ninth Circuit considers a release order to be a contract, with the bond amount akin to a liquidated damages clause, and the cost and inconvenience incurred by the government as a result of a defendant's breach of bond conditions need not be specified, nor does it need to match the amount of the bond. *See United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 604-05 (9th Cir. 1995). "The hallmark of a liquidated damage provision is reasonableness at the time the agreement is made rather than a calculation of actual provable losses when the breach occurs." *Id.* at 604.

12

The district court also determined that allowing partial or full exoneration would undermine the purpose of the bail system by incentivizing flight and weakening the surety's obligation to ensure the defendant's appearance. As the district court correctly noted, the bail system relies on the surety's ability and financial motivation to secure attendance--a risk the surety voluntarily undertakes in exchange for the bond premium. Given these findings, the district court acted well within its discretion in weighing the cost, inconvenience, and prejudice factors, even absent documentary proof of monetary loss.

**D.    Full or Partial Exoneration of Bond Forfeiture**

Finally, Allegheny argues that the district court misunderstood the governing legal framework by concluding it could either fully exonerate the bond or deny exoneration altogether. Although Allegheny argued below that full exoneration was warranted under its asserted "but for" causation theory, it now maintains that Idaho law permits *partial* exoneration even when the State is not the exclusive cause of forfeiture.

In deciding how much, if any, of the bond to forfeit, the trial court should also consider: (1) the willfulness of the defendant's violation of bail conditions; (2) the surety's participation in locating and apprehending the defendant; (3) the costs, inconvenience, and prejudice suffered by the State as a result of the violation; (4) any intangible costs; (5) the public's interest in ensuring a defendant's appearance; and (6) any mitigating factors. *State v. Fry*, 128 Idaho 50, 54, 910 P.2d 164, 168 (Ct. App. 1994).

The district court concluded that Huang's departure from the United States was an act that fell within the risks Allegheny assumed. The district court determined that Huang's absence prejudiced the State by preventing it from prosecuting a case involving alleged victims and undermining the State's ability to ensure the alleged victims' interests were protected. The district court further reasoned that granting full or partial exoneration in these circumstances would create adverse incentives--encouraging defendants to abscond and diminishing bond companies' incentives to take meaningful steps to ensure their client's appearance, which is the core value a surety provides.

The district court acknowledged the procedural "twists and turns" in the case but did not find anything so extraordinary as to alter the inherent risks the surety undertook when issuing the bond. Because none of the statutory or rule-based protections for sureties applied and after

13

weighing the I.C.R. 46(h)(1) factors, the district court concluded that Allegheny failed to show that justice required relief from forfeiture.

The district court did not approach the question of exoneration as an all-or-nothing proposition; rather, its ruling reflects that it engaged in the proper multi-factor analysis. The district court expressly evaluated the circumstances surrounding the defendant absconding, the resulting prejudice to the State, the risks inherently assumed by the surety, and the policy considerations underlying Idaho's bail framework. It further acknowledged the procedural developments in the case but found them insufficient to alter the surety's fundamental obligations. In short, the record does not support Allegheny's assertion that the district court believed it was constrained to either grant full exoneration or none at all. To the contrary, the district court weighed the relevant factors and concluded that neither partial nor full exoneration was warranted. Allegheny failed to demonstrate an abuse of discretion in the district court's decision to deny exoneration of its bond.

## IV.

## CONCLUSION

Allegheny has failed to show that the district court abused its discretion in denying Allegheny's motion. Accordingly, the district court's order denying motion to set aside forfeiture and exonerate bond is affirmed.

Judge GRATTON and Judge LORELLO, **CONCUR**.